STORCH *v.* ZONING BOARD OF HOWARD COUNTY

[No. 104, September Term, 1972.]

*Decided December 22, 1972.*

The cause was argued before BARNES, SINGLEY, SMITH and DIGGES, JJ., and WILLIAM B. BOWIE, Associate Judge of the Seventh Judicial Circuit, specially assigned.

*Bernard F. Goldberg* for appellant.

*Robert F. Fischer, County Solicitor,* for appellee.

BARNES, J., delivered the opinion of the Court.

The questions presented to us by this appeal revolve around the validity of amendments to the text of the Howard County Zoning Regulations ordered by the ap-

pellee, the Zoning Board of Howard County (Zoning Board), on October 11, 1971. The Circuit Court for Howard County (Macgill, C. J.) sustained the validity of the amendments by its order of March 10, 1972, from which the appellant, Bourough Storch, an aggrieved landowner and builder, took a timely appeal.

Ridgely Jones, one of the members of the Zoning Board, in accordance with Section 33.01 of the Howard County Zoning Regulations, filed a petition with the Zoning Board on August 27, 1971, to delete the words "and two" from the following Sections: 2.01, R-90 Residential, one and two family detached; 2.02, R-40 Residential, one and two family detached; 2.03, R-20 Residential, one and two family detached; 2.04, R-16 Residential and 4.011, uses permitted in the R-90 districts, one and two family detached dwellings. The effect of the proposed amendments was to confine the permitted use for dwellings in the residential districts mentioned (R-90, R-40 and R-20) to *one family* detached dwellings rather than the then existing one *and two* family detached dwellings.

The requirements of the Zoning Regulations in regard to notice and public hearing before the Zoning Board of the petition were duly met. The Zoning Board held the hearing on September 28, 1971, at which the Zoning Regulations, the General Plans and the Report of the Howard County Planning Board of September 23, 1971, were introduced into evidence.

The "Conclusions" in the Planning Board's Report were as follows:

"1. The Planning Board cannot determine any reason to delete two-family detached dwellings from Section 4.011 of the Zoning Regulations.

"2. The Planning Board sees no detrimental effect of two-family detached dwellings located in single-family detached areas.

"3. If the intent of the petitioner is to dis-

courage a large concentration of multi-family dwellings in an otherwise single-family residential area then it would be better if the proposed Regulations were worded to allow two-family dwellings in R-90 through R-16 Districts, only when those dwellings are 'owner occupied'. Thereby, disallowing both units to be rented by an absentee owner. This may be accomplished by amending Section 37.28, which is the definition of a two-family dwelling.

"4. The Planning Board also suggests that an alternative approach might be that a new Section 30.13 be added to the Zoning Regulations to provide for two-family dwellings in the R-90 through R-16 Districts, by approval of the Board of Appeals.

"Therefore, in view of the above findings and conclusions the Planning Board recommends that the Zoning Board adopt one of the two alternative solutions mentioned in Items 3 and 4."

In addition to the Planning Board's Report and the documentary evidence mentioned, three residents and property owners testified in favor of the proposed amendments, *i.e.*, Douglas May, Philip Paris and Herschell Doss. Mr. May is President of the Pine Orchard Improvement Association. He was alerted to the provision permitting two family detached dwellings in certain residential zones so far as density was concerned by a decision of the Zoning Board earlier in 1971 to reject a builder's application to rezone the builder's land from half-acre lots to quarter-acre lots, but then have the same density on the half-acre lots by the erection of two family detached houses as one would have on quarter-acre lots with one family detached houses. Theretofore, there had been relatively few applications for the two family dwellings so that there had been little difficulty with density;

but he had been advised that recently 14 or 17 permits had been issued, with 20 applications pending, a total of 37, which in turn would put the density at 74 houses or the same as if the quarter-acre lot application had been granted rather than denied. In his opinion, this two family dwelling provision was incongruous and provided for an undesirable density in a small area, doubling traffic with a resulting adverse effect.

Mr. Paris testified substantially to the same effect as did Mr. May. He was of the opinion that unless the proposed amendments were adopted, "other communities within this County could be seriously affected, as we are by traffic problems, by sewerage problems, by water problems and quite possibly, although I have no way of knowing for sure, by reduction in value of their homes." He stated that he was "objecting to them [two family detached dwellings] because of what happened to us right now. . . . I was raised in East Baltimore and I moved to this County to get away from that sort of thing."

Mr. Doss testified that, in his opinion, to "double the density on the R-90 through R-16 Districts would be disastrous." He had calculated that if the maximum number of permits for two family detached dwellings were granted, it would "add a population potential to this County of 398,000 people. I think it adversely affects my property value." The 398,000 figure was somewhat shaken on cross-examination; but the Zoning Board let it stay in the record "for what it's worth." Like the other two witnesses, Mr. Doss had little objection to a few, scattered two family dwellings, but was alarmed by a "concentration of them" in the County during the last two months. He considered a concentration of approximately 20 acres as a major concentration.

The appellant, Bourough Storch, produced the testimony of his engineer, Ronald E. Bailey, who was familiar with Mr. Storch's development. He was of the opinion that the existing Zoning Regulations in regard to two family detached dwellings would have no adverse effect

on the County's facilities and were in the best interest of the County. All of the relevant factors were taken into consideration with the adoption of the General Plan in 1960 and provided a desirable flexibility in residential development. The Howard County Department of Public Works, in a memorandum of August 30, 1971, indicated that the "Present occurrence of two-family homes in these areas are not significant and have not had an adverse effect upon the water and sewer facilities."

On October 11, 1971, the Zoning Board unanimously granted the application to amend the text of the Zoning Regulations as already set forth and added two additional text amendments, as follows:

"19.33 The Board may approve the conversion of any single family dwelling unit to a two family detached dwelling unit in any Zoning District.

"19.34 The Board may approve an individual site for a two family dwelling unit in the R-90, R-40, R-20 Zoning Districts."

The Zoning Board made the following findings:

"1. That under the present regulations it is possible to develop large concentrations of multi-family dwellings in otherwise single-family residential areas.

"2. That the development of large concentrations of multi-family dwellings in single-family residential areas is not in accordance with the general plan of development of Howard County.

"3. That the Zoning Board feels the deletion of the use of a two family detached dwelling would not allow a person to have elderly parents or children living with them in a separate attached unit, and further a two family detached dwelling may provide the purchaser of the property the possibility of buying the house since he could defray some of the expenses from the rent received on the additional unit.

"4. That the Zoning Board feels that to absolutely restrict two family detached dwellings in all districts would not be in the public interest."

The appellant duly filed an appeal from the decision of the Zoning Board to the Circuit Court for Howard County and Chief Judge Macgill, on March 10, 1972, filed an opinion and an order sustaining the Zoning Board's action. In that opinion Judge Macgill aptly stated:

"This Court concludes, in reviewing the transcript of the testimony before the Board, that the action of the Board in adopting the amendments to the zoning regulations was, at least fairly debatable and within the sound discretion of that body. The negative report of the Planning Board was not, in itself, sufficient to invalidate the Board's action. *Mandel v. Board of County Commissioners, supra,* 219. To use the words of *Lipsitz v. Parr,* 164 Md. 222, 232 'In reaching this conclusion, the court has taken into consideration all the testimony that is on the record and proper to be admitted. It does not ignore that something may be said in support of a different view. There are few questions which do not admit of argument, but something more than admissible controversy is required.' "

The appellant raised four questions in his brief and at argument, as follows:

"(1) Is the evidence before the Zoning Board sufficient to make the deletion fairly debatable?

"(2) Where the action of the Zoning Board in deleting a Regulation was clearly devoid of supporting evidence, should the Court have reversed their action?

"(3) Did the Zoning Board of Howard County comply with the provisions of the Zon-

ing Regulations of Howard County in enacting a new Zoning Regulation in the entitled case?

"(4) When adopting, deleting, modifying or changing a Zoning Regulation, is the Zoning Board required to be in accordance with the Comprehensive Master Plan?"

## (1) and (2)

Questions 1 and 2 are closely related and we will consider them together.

The County Council of Howard County, on March 12, 1969, adopted Council Bill No. 3 which repealed Sections 343, 344 and 347 of the Code of Public Local Laws of Howard County (1965 Ed.), being Article 14 of the Code of Public Local Laws of Maryland, title "Zoning districts; designation; procedure, hearings, notice" and enacted new Sections 16.200 through 16.209, inclusive, of the Howard County Code. This change established a legislative agency of the County Council consisting of the members of the County Council to be the zoning authority of Howard County and provided for the designation, establishment, adoption, modification, supplementation, enforcement and repeal of zoning districts, boundaries and regulations; provided for the procedure of designation, establishment, adoption, amendment, modification, supplementation and repeal thereof and for appeals from decisions of the Zoning Board.

Section 16.201 provided that the Zoning Board "shall consist of the members of the County Council." After provisions for the establishment of Zoning Districts and Zoning Regulations and provisions for posting and publication of notices and for hearings, Sections 16.205 and 16.206 set out the procedure for amendments, repeal or changes in the Zoning Regulations and changes in district boundaries as well as the conduct of hearings. A petition for amendment may be filed by any party owning an interest in land or any state or county official; and various requirements for preparation of an official record, including testimony and exhibits, with findings

of fact and conclusions of law by the Zoning Board, are established.

Of particular importance in the present case are the provisions of Section 16.207 in regard to judicial review. After providing for an appeal from a final decision of the Zoning Board within 30 days to the Circuit Court for Howard County by any person, officer, department, board or bureau of the County or State "jointly or severally aggrieved by any such decision and order" and a party to the proceeding below, Section 16.207 provides, in relevant part:

> "The court may affirm the decision of the Zoning Board or remand the case for further proceedings, or it may reverse or modify the decision if the substantial rights of the appellants may have been prejudiced because the Zoning Board's findings, inferences, conclusions, or decisions are:
>
> "(1) In violation of constitution or charter provisions; or
> "(2) Beyond the statutory authority or jurisdiction of the Board; or
> "(3) Made upon unlawful procedure; or
> "(4) Fraudulent; or
> "(5) So grossly erroneous as to imply bad faith; or
> "(6) Unsupported by competent, material, and substantial evidence in view of the entire record as submitted; or
> "(7) Arbitrary or capricious or affected by other error or law."

It thus appears that even though the Zoning Board consists of the elected members of the County Council and the Chairman of the County Council is also the Chairman of the Zoning Board, Council Bill No. 3 imposes various *legislative* restrictions upon the Zoning Board in exercising its delegated legislative powers, which may well not be *constitutionally* or otherwise im-

posed upon the County Council in the exercise of its legislative powers. Although somewhat reminiscent of the song in Gilbert and Sullivan's *Iolanthe,* "Said I to myself, said I," [1] we have held that Council Bill No. 3 is a valid delegation of legislative power and represents a lawful restriction upon the exercise of delegated legislative powers to the Zoning Board even though, as indicated, the membership of that Board and the membership of the County Council is identical. *Turf Valley Associates v. Zoning Board of Howard County,* 262 Md. 632, 642, 278 A. 2d 574, 579 (1971). In *Turf Valley,* we stated:

"The provisions of the Howard County charter impose no substantial or significant barrier to the delegation made by Bill 3. The argument of Turf Valley is that zoning is law making and under the charter only the County Council can make law. The power given the Council, the legislature of the County under the charter, by the express powers act is to pass local laws 'in relation to planning and zoning.' Bill 3 unquestionably is a local law relating to zoning. Section 207 of the charter says the law making power of the Council includes 'all such powers as heretofore have been exercised by the General Assembly of Maryland and transferred to the people of the County by the adoption of this Charter.' The General Assembly had, and exercised, the power to enact a zoning enabling act and that power was transferred to the Council by the Constitution and the express powers act when the Charter was adopted. The Council added to its legislative hat another piece of headgear when it made for itself a zoning board hat by the passage of Bill 3. The fact that the members and officers of the Zoning Board are identical with those of the Council gratifies

---

1. The Lord Chancellor's song, "Iolanthe," Act I, No. 12 of the musical score.

the mandate of Sec. 204 of the Charter that the Council shall act as a body and not delegate any of its functions and duties to a smaller number of its members than a whole. That the Council required the Board to adjust facts and made it subject to Bill 7, the Administrative Procedure Act, as well as the fact that the appeal provisions in Bill 3 say the appeal to the Circuit Court is equated with appeals from administrative agencies, does not prevent the effective delegation to it of powers legislative in nature. Section 16.201 of Bill 3 states the intention of the Council to have been 'to establish a legislative agency * * * which shall be the zoning authority of Howard County.' The Council did not absolutely abrogate its powers in relation to zoning. It can abolish the Board at any time and itself zone and rezone. In the meantime it empowered the Board to amend, supplement, change or repeal 'zoning regulations, districts, boundaries and restrictions.' The pattern followed by the Council was that drawn by the legislature of Maryland in making the members of the County Council in the chartered counties of Montgomery and Prince George's the members of the District Councils in those counties with the power to zone and rezone, comprehensively and piecemeal, subject both to procedural standards and requirements usually associated with administrative agencies and judicial review. *Woodlawn Area Citizens Association, Inc. v. Board of County Commissioners of Prince George's County,* 241 Md. 187, 190-193. The zoning processes include the quasi-judicial function and the function legislative in character. *Hyson v. Montgomery County, supra.*"

262 Md. at 642-44, 278 A. 2d at 579-80.

But for the limitations in Council Bill No. 3 upon the exercise of the delegated legislative powers to the Zon-

ing Board, it might well have been that the amendments to the Zoning Regulations could have been adopted constitutionally by the Zoning Board without hearing *any evidence*. As our predecessors stated in *Mayor and City Council of Baltimore v. Biermann,* 187 Md. 514, 523, 50 A. 2d 804, 808 (1947):

> "Considering the action of the Board as an exercise of delegated legislative, or quasi legislative, power, the scope of review is different and in some respects more limited than where the action is quasi judicial; *e.g.,* the court must find that the result of the action is beyond the police power and deprives the applicant of property without due process of law. On this question the property owner has the heavy burden of overcoming the presumption of constitutionality of legislative action, even if the legislative body acted *without evidence at all.*" (Emphasis supplied)

*See also Crown Central v. City of Baltimore,* 258 Md. 82, 89, 265 A. 2d 192, 196 (1970).

In the present case, however—as we have already noted—there are limitations upon the exercise of the delegated legislative power by the Zoning Board which include limitations (6) and (7) in Section 16.207 in regard to judicial review, which grant the circuit court the power to review the action of the Zoning Board if "substantial rights of the appellants may have been prejudiced because the Zoning Board's findings, inferences, conclusions, or decisions are:"

\* \* \*

"(6) Unsupported by competent, material, and substantial evidence in view of the entire record as submitted;[2] or

---

2. This provision in regard to judicial review does not present any question of an attempt to delegate legislative power to the judicial branch of the State government, forbidden by Article 8 of the Declaration of Rights of the Maryland Constitution, in that it articulates one of the well-recognized bases for a denial of due

"(7) Arbitrary or capricious or affected by other error or [of?] law."

In our opinion, the action of the Zoning Board was supported by competent, material and substantial evidence sufficient to make the passage of the text amendments fairly debatable.

First of all, the Report of the Planning Board recommended, as an alternative, the very action taken by the Zoning Board, *i.e.*, prohibiting two family detached dwellings in the zones mentioned as a matter of right, but providing that the Zoning Board may approve (1) the conversion of any single family dwelling unit to a two family detached dwelling unit in any zoning district and (2) an individual site for a two family dwelling unit in the R-90, R-40 and R-20 zoning districts. We have held that a Report by a Planning Board or by its

process of law guaranteed by Article 23 of the Declaration of Rights. See Board of County Commissioners of Prince George's County v. Kines, 239 Md. 119, 124-25, 210 A. 2d 367, 370 (1965) and prior Maryland cases cited in that opinion.

If the action of the Zoning Board is quasi-judicial and is unsupported by competent, material and substantial evidence, then its action would be unreasonable, arbitrary and capricious and, as such, would result in a denial of due process.

If there is competent, material and substantial ·evidence in the record supporting the Zoning Board's action, then the matter is "fairly debatable" and there would be no denial of due process. We do not understand that provision (6), supra, provides for the *evaluation or weighing* by the lower court of *conflicting evidence*, as might be the possible result of the provisions in some zoning ordinances, that the court may reverse the action of the Zoning Board if it is "against *the weight* of the competent, material evidence in view of the entire record, as submitted by the agency." (Emphasis supplied) We have thus far successfully avoided passing upon the constitutionality of this type of provision. See MacDonald v. Board of County Commissioners for Prince George's County, 238 Md. 556, 602-603, 210 A. 2d 329, 355 (1965) (dissenting opinion); Board of County Commissioners of Prince George's County v. Levitt, 235 Md. 151, 158-59, 200 A. 2d 670, 675 (1964); Board of County Commissioners of Prince George's County v. Oak Hill Farms, Inc., 232 Md. 274, 277, 192 A. 2d 761, 766 (1963); Bishop v. Board of County Commissioners of Prince George's County, 230 Md. 494, 500, 187 A. 2d 851, 854 (1963); County Commissioners of Prince George's County v. Donohoe, 220 Md. 362, 371, 152 A. 2d 555, 560 (1959).

As indicated, we do not equate provision (6) with the provisions involved in the cases cited and, in any event, no constitutional issue is presented to us in view of our opinion that the matter in the present case is fairly debatable.

Technical Staff is, in itself, sufficient evidence to make a Zoning Board's action fairly debatable. *See Board of County Commissioners of Howard County v. Turf Valley Associates,* 247 Md. 556, 562, 233 A. 2d 753, 756-57 (1967) and prior Maryland cases therein cited.

Secondly, the testimony of Messrs. May, Paris and Doss—although somewhat thin—did present some factual basis for justified apprehension in regard to an unwarranted increase in density resulting from the existing provisions of the Zoning Regulations relating to two family detached dwellings with consequent dangers from increased traffic, overburdening of public facilities and the like. Their testimony was admissible; its weight was for the Zoning Board, and not for the courts.

## (3)

The appellant contends that the Zoning Board did not comply with the provisions of the Zoning Ordinance in enacting the new Zoning Regulations here involved. This contention is apparently based on the theory that inasmuch as new Sections 19.33 and 19.34 giving power to the Board of Zoning Appeals permit two family dwellings as a special exception were not in the petition filed by Mr. Jones, there was a failure to comply with Section 16.205 of the Zoning Ordinance in regard to the procedure required for amendments to the Zoning Regulations.

In our opinion, there was no failure to comply with the provisions of Section 16.205. The amendments proposed in the Jones petition would have completely eliminated two family detached dwellings in the zoning districts mentioned. The final action of the Zoning Board was *less restrictive* in that the Board of Zoning Appeals was given power to *permit* two family detached houses as special exceptions. At the hearing of September 28, 1971, on the Jones petition, the Report of the Planning Board was offered in evidence indicating the alternative recommendation which the Zoning Board ultimately adopted. Section 16.205 does not require a *second hear-*

*ing* to consider recommended modifications of the amendments previously proposed and no such hearing is required by due process of law. *See Albert v. Public Service Commission of Maryland,* 209 Md. 27, 120 A. 2d 346 (1956). *Cf. Nottingham Village, Inc. v. Baltimore County,* 266 Md. 339, 292 A. 2d 680 (1972) and *Hewitt v. Baltimore County,* 220 Md. 48, 151 A. 2d 144 (1959).

### (4)

The appellant finally contends that the adopted text amendments are not "in accordance with the comprehensive master plan." Apparently, the thought is that in view of the fact that when the Comprehensive Master Plan was adopted on May 16, 1961, the Zoning Regulations permitted two family detached houses at that time and there had been no changes in that plan since that time and allegedly no evidence in the present case showing any adverse effect upon the capabilities of the county water and sewer facilities, the amendments are not in accordance with the Comprehensive Master Plan. This seems to be another aspect of the alleged absence of any substantial evidence to support the action of the Zoning Board already considered by us under questions (1) and (2), *supra,* which we have decided adversely to the contentions of the appellant. This fourth contention also fails for the same reasons.

In any event, the purposes of the amendments in regard to density are in accord with the purposes of the Comprehensive Master Plan and we see no conflict between them.

*Order of November 2, 1971, affirmed, the appellant to pay the costs.*