RASNAKE ET AL. *v.* BOARD OF COUNTY
COMMISSIONERS OF CECIL COUNTY

[No. 187, September Term, 1972.]

*Decided February 28, 1973.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*Daniel H. Bathon* for appellants.

*O. Robert Lidums*, with whom was *William B. Calvert* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

Because we see a fundamental difference between the facts in this case and those in *Hewitt v. Baltimore County*, 220 Md. 48, 151 A. 2d 144 (1959), and *Walker v. Talbot County*, 208 Md. 72, 116 A. 2d 393 (1955), relied upon by a trial judge in concluding that Cecil County fully complied with the provisions relative to notice of a proposed change in its zoning ordinance, we shall reverse that determination.

The Cecil County zoning ordinance had permitted "[t]emporary buildings and uses for construction purposes" in any zone "when approved by the Board of Appeals" subject to certain restrictions, one of which was that the permits so issued had an outside limit in time, with renewals, of two years. They had been used, apparently, for placement of trailers or mobile homes on lots when the occupant was building his own home. Provision for amendment was made in § 13 of the ordinance which stated in relevant part:

"The regulations . . . set forth in this ordinance may from time to time be amended . . .

provided however that no such action may be taken until after a public hearing in relation thereto, at which parties in interest and citizens shall have an opportunity to be heard. At least fifteen days' notice of the time and place of such hearing shall be published in a newspaper of general circulation in the county.

"Any proposed amendment shall be submitted to the Planning Commission for report and recommendation prior to any action thereon by the County Commissioners. The . . . County Commissioners may originate proposed amendments."

The county commissioners proposed an amendment which would have permitted these temporary buildings and uses for construction purposes "when approved by the Cecil County Zoning Inspector," without any revised restrictions except that the zoning inspector was permitted to revoke the temporary permit at any time he believed that satisfactory progress in construction was not shown. The county commissioners published a notice of the hearing which set forth the proposed ordinance as amended verbatim. The notice then stated:

"NOTE: *The legal effect of the above ordinance, if adopted, will be to allow the Cecil County Zoning Inspector to approve certain structures and uses in any zone rather than to require approval by the Board of Appeals, which is presently necessary. In addition it would allow the Zoning Inspector to revoke any approval previously given if in his opinion satisfactory progress in construction is not shown.* (This explanation is not a part of the ordinance)." (Emphasis in the notice.)

The hearing was duly held. The county engineer spoke of his "short experience" in Cecil County and harkened back to his World War II experiences in Indiana "where

variations were made in respect that a man could build his basement, top it off and live in the basement, and then progressively build his house." He claimed the program "was abused because people got in the basement, lived there, never continued . . . result[ing] in the elimination of the entire program." He then suggested amendment of the ordinance to require the filing of a $500 bond by the applicant, the bond to be returned to the applicant if completion of the construction project occurred within the specified time of the permit, otherwise the applicant was to forfeit his bond and permanently vacate the temporary building or use. His proposal also called for elimination of the provision for revocation of the permit if the building inspector were not satisfied with progress. In making his recommendation the engineer said:

> "The type of bond subject to the approval of the Commissioners could be an amount put in escrow in a bank so that the applicant could derive the interest that this money would accrue over the period of the permit."

The persons present at the hearing indicated their approval of the amendment as originally proposed by the commissioners, but the $500 bond provision brought a storm of protest. As one person put it:

> "After listening to this gentleman here, these people are moving on this property to save money. Now, if they have the $500 to do this, what he is asking them to do is jeopardize $500 of hard earned cash, if they run into hardships. Maybe he was born with a silver spoon. A lot of us weren't. And we have to live the way we can live. And a lot of these people are doing this because they are trying to get ahead. They are not doing it to be jeopardized by forfeiting a $500 bond, which they would have to put up in cash if the bond went through. This is ridiculous."

Another protestant said:

> "I would like to make a comment in regard to this trailer business. We have three classes of people in this country. We have millionaires, who do as they please. Then we have a group of people who were born poor and run to the State Board all their lives, not willing to exert themselves, try to better themselves. We have another class of people who were born poor who are willing to work to have something for themselves.

> "I approve of this construction trailer. We had many cases in the county where the lumber was stolen almost as soon as it was unloaded. If a man puts a trailer there he can work at night and weekends. If [he] pays for the lumber and the lot, that is a handsome price. But when you pay $4 and $8 an hour for construction purposes, they just can't make it.

> "And I think the two-year limit is all right providing you have some 'ifs' in it. A man might work out in a few years' time, but he may have somebody who goes to the hospital and have a doctor bill and a hospital bill, and that can put a crimp in his style. And if you are going to cut him off in two years' time and make him move out because something happened that he had no control over, I don't want that forced on our people. I have been here all of my life, and am one of that class of people that I am talking about.

> "When you put a bond on a man, or make him put up or forfeit something before he can start on this, that is throwing a stumbling block in the path of a man who can't afford it, and I am opposed to it, and I would like some ifs and ands and buts in there so if he has hard luck and can't make out in two years, give him an extension."

Without further hearing, the county commissioners in accordance with the recommendations of the engineer eliminated the provision for revocation if the zoning inspector were not satisfied with progress and substituted a paragraph setting forth an additional restriction upon such permits. It read:

> "d. The applicant post a bond in the amount of five hundred dollars ($500.00) (cash, surety, or property bond) to the County Commissioners of Cecil County, said bond to be returned to the applicant if completion of the construction project occurs within the specified time of the permit, otherwise the applicant forfeits his bonds and permanently vacates the temporary building or use."

The appellants unsuccessfully sought a determination by the Circuit Court for Cecil County that the bond provision of the ordinance is invalid. They do not contest the right of the county to amend its ordinance by requiring such a bond, but say that there was a substantial change here without prior public notice, and without a proper chance to be heard, so that the commissioners should be required to give the public prior notice that they intend to include a bond provision. They concede that substantial changes in an ordinance after hearing are permissible, but say that "those changes must have been indicated as possible in the original notice." We agree.

In 8A McQuillin, *Municipal Corporations* § 25.249 (1965 rev. ed., Supp. 1972) it is stated:

> "Notice of a zoning ordinance or amendment or of hearings thereon generally must be given where and as required, and the ordinance or amendment is invalid for failure to give required notice. . . . The notice must adequately inform as to what changes are proposed, and the actual change must conform substantially to the pro-

posed changes in the notice. Some deviation from the proposed changes may be immaterial. However, a substantial difference between the ordinance or amendment as enacted and the description thereof in the notice will ordinarily invalidate the enactment. Ordinarily, if the ordinance or amendment as finally adopted contains alterations substantially different, amounting to a new proposal, from those originally advertised and heard, there must be additional notice, although no further notice is required after a properly advertised and properly conducted public hearing when the alteration of the initial proposal is insubstantial. Moreover, additional notice ordinarily will not be required when the initial notice is broad enough to indicate the possibility of substantial change and substantial changes are made at the initial hearing of the same fundamental character as contained in the notice. A notice has been said to be sufficient if it gives the average reader reasonable warning that property in which he has an interest may be affected by the proposed zoning legislation, and affords him an opportunity by the exercise of reasonable diligence to determine whether such is the fact." *Id.* at 177-79.

In 1 Anderson, *American Law of Zoning,* § 4.15 (1968), it is said:

"It should not be concluded that every change in a proposed ordinance made after the conclusion of public hearings requires a second notice and hearing. Minor alterations in the proposed regulation do not require a new hearing; only substantial changes take the proposed ordinance beyond the scope of the initial hearing and require that the hearing process be repeated." *Id.* at 180-81.

*See also* 1 Rathkopf, *The Law of Zoning and Planning* 8-18 (3rd ed. 1971 Cum. Supp.) ; Rhyne, *Municipal Law* § 32.5 at 832 (1957) ; 58 Am. Jur. *Zoning* § 10 (1948, 1972 Cum. Supp.) ; 101 C.J.S. *Zoning* § 110 (1958) ; and Annot., *Zoning Ordinance—Notice Requirements* 96 A.L.R.2d 449, 484-93 (1964).

In *Swarthmore Co. v. Kaestner*, 258 Md. 517, 266 A. 2d 341 (1970), Judge Barnes said for the Court, referring to *Hewitt:*

> "We have also indicated that a substantial change may be validly made in a proposed comprehensive zoning map after the public hearing has been held on the originally proposed comprehensive zoning map and no additional notice or hearing was required by statutory language quite similar to that used in Sec. 22-21 of the Baltimore County Charter. *Hewitt v. County Commissioners of Baltimore County,* 220 Md. 48, 56, 151 A. 2d 144, 148 (1959). Indeed, in *Ark Readi-Mix Concrete Corp. v. Smith,* 251 Md. 1, 3, 246 A. 2d 220 (1968) we sustained a change made by the County Council in that case on a proposed comprehensive zoning map *requested on the same day the ordinance was passed,* where there had been no prior discussion, proposal or a request for the change made at the hearing on the proposed comprehensive zoning map and, of course, no notice or prior hearing in regard to the requested change." *Id.* at 532. (Emphasis in the original.)

The trial judge in this case found the bond requirement here to be "directly related to the subject matter of the proposed change." He then quoted from *Hewitt* where Chief Judge Brune said for the Court:

> "We do not think the statutory language could be construed as requiring the County Commissioners to state in advance (what they could

hardly know) the exact nature of any action which they might take with regard to matters brought to their attention at the contemplated hearing. Indeed, it is difficult to see how (without either prejudgment or prophecy) the notice here given could have been much more explicit or informative than it was. The appellants certainly had no right to assume that the legislative body entrusted with the sole power to enact a comprehensive zoning or rezoning ordinance in Baltimore County was bound to adopt the proposals or recommendations submitted by the Zoning Commissioner." (Citing cases.) *Id.* at 56 of 220 Md.

*Hewitt* has been cited and followed in *Swarthmore* and more recently in *Nottingham Village v. Balto. Co.*, 266 Md. 339, 348, 292 A. 2d 680 (1972). Both *Nottingham* and *Hewitt* were cited in *Storch v. Zoning Board of Howard County*, 267 Md. 476, 298 A. 2d 8 (1972), a case significantly different from this case and one which points up the line of demarcation between this case and *Walker, Hewitt,* and *Nottingham.* In *Storch* the zoning ordinance permitted two family residences in the zones under consideration. It was proposed to amend the ordinance to confine the permitted uses to one family detached dwellings. The notice so stated. As ultimately enacted two family detached homes were permitted in the zones under consideration as special exceptions. In striking down the challenge to the ordinance based upon the failure to hold a second hearing Judge Barnes observed for the Court:

> "The final action of the Zoning Board was *less restrictive* in that the Board of Zoning Appeals was given power to *permit* two family detached houses as special exceptions." *Id.* at 489. (Emphasis in original.)

In *Walker, Hewitt,* and *Nottingham* comprehensive zoning was under consideration. As the very term im-

plies, the proposals and, therefore, the subjects under consideration at the hearing were wide, as the notice would have indicated. Here, a single, narrow subject was involved and the notice after quoting the proposed text of the amendment pinpointed the change proposed to be made. The less affluent members of the Cecil County constituency who would have been concerned with placement of a mobile home as a temporary structure while they proceeded to erect their homes would have seen that notice as easing the maze of red tape through which they might have to wend their way in obtaining permission to place their temporary structures. Accordingly, they might well have seen no reason to attend the hearing. In fairness, it must be said that the individual appellants here were present. Many persons who were affected by the change may well have stayed home, however. The change here made was not similar to that in *Storch* nor to that in *Community Home Builders v. Town Council of North Kingstown*, 83 R. I. 409, 117 A. 2d 544 (1955), where after hearing the ordinance was amended by the addition of the words "at their least" in one sentence. Although an implementation of the original proposal, the bond amendment was more restrictive in nature and one that a citizen of modest means might well find erected a barrier making impossible his dream of constructing his own home while living on the premises in a mobile home. People who build their own homes do not normally have $500 in extra cash lying around for a cash bond. It is probable that for this type of bond a surety company would require a cash deposit with it before writing the bond. Restrictions in loan instruments relative to his land and the construction of a home might well render it impossible for such an individual to use his lot as the property bond mentioned. In short, we regard the amendment here as precisely the type of "substantial difference between the . . . amendment as enacted and the description thereof in the notice" which McQuillin said would "ordinarily invalidate the enactment." This holding is not intended to undermine or erode our holdings in *Walker*,

*Hewitt, Swarthmore,* and *Nottingham* since, paraphrasing Chief Judge Brune in *Hewitt,* a legislative body should not be required to state in advance the exact nature of any action which it might take with regard to matters brought to its attention at the hearing. Our holding today goes no further than the facts presented in this case and any case in which the facts may be similar.

> *Order r e v e r s e d; case remanded for passage of a decree consistent with this opinion; Cecil County to pay the costs.*