268 Md. 445 (1973)
302 A.2d 4
VON LUSCH
v.
BOARD OF COUNTY COMMISSIONERS OF QUEEN ANNE'S COUNTY ET AL.
[No. 207, September Term, 1972.]
Court of Appeals of Maryland.
Decided March 28, 1973.
The cause was argued before MURPHY, C.J., and BARNES, SINGLEY, DIGGES and LEVINE, JJ.
James F. Vance for appellant.
Franklin Goldstein and James E. Thompson, Jr., with whom was Vachel A. Downes, Jr., on the brief, for appellees.
BARNES, J., delivered the opinion of the Court.
This appeal involves the validity of a text amendment to the Zoning Ordinance of Queen Anne's County on June 22, 1971, adding to Article 17 new Sections 17.14, 17.141 and 17.142 in regard to airports, airfields and landing strips in Queen Anne's County. The Circuit Court for Queen Anne's County (Turner, J.), in a written opinion *447 filed July 28, 1972, declared the action of the County Commissioners of Queen Anne's County (County Commissioners) in adopting the amendment valid and denied the petition of appeal of Richard von Lusch, who perfected a timely appeal to us from Judge Turner's order.
The Bay Bridge Airport, owned by Kent Island Limited Partnership, is located on the south side of United States Route 50/301 approximately one-half mile east of the Chesapeake Bay Bridge near Stevensville, Queen Anne's County. It was zoned R-4 in the Comprehensive Zoning Ordinance adopted by the County Commissioners in April 1964. Later, in September 1966, the property was rezoned to the M-1 (Industrial Park) zone. The permitted uses in this zone, by Article 15 of the Zoning Ordinance, were light manufacturing uses as well as the usual agricultural uses, but did not include an airport use. Article 15.30 permitted accessory buildings and uses "customarily incident to any permitted use." Section 15.502 provided as follows:
"No use shall be permitted to be established or maintained which by reason of its nature or manner of operation is or may become hazardous, objectionable, or offensive, by reason of explosion, fire, odor, dust, smoke, cinders, gas, fumes, noise, vibration, radiation, refuse matter, or water-carried waste."
Article 19.4 of the Zoning Ordinance in regard to violations provided that the County Commissioners, their attorney, the Zoning Administrator "or any adjacent or neighboring property owner who would be specifically damaged" by a violation in addition to other remedies provided by law "may institute injunction, mandamus, abatement, or any other appropriate action or proceeding to prevent, restrain, correct or abate" the unlawful act or use.
In approximately 1962, the appellant von Lusch purchased his home and business property  "Old Schoolhowse Antiques"  immediately north across Route *448 50/301 from the Bay Bridge Airport. His testimony in the hearing before the County Commissioners in connection with the proposed text amendment indicated that the noise and dangers from the operation of the airport concerned him greatly and caused him to have heart attacks, loss of hearing, severe nervousness, tension and other substantial damages. Other persons in the neighborhood of the airport indicated that they too had been substantially disturbed and endangered by the operation of the airport.
Mr. von Lusch in June of 1971 filed a bill of complaint in the Circuit Court for Queen Anne's County, in Equity, to enjoin the alleged illegal commercial airport operations of the Bay Bridge Airport; Kent Island Limited Partnership, the owner of Bay Bridge Airport, intervened in this suit as a party defendant. Before this suit was tried on its merits, however, the County Commissioners proceeded with a text amendment to the Zoning Ordinance, the passage of which rendered the equity suit moot. Mr. von Lusch filed his order for appeal and his petition for appeal to the circuit court in regular course to challenge the validity of the text amendment.
The text amendment was originally prepared by the Planning Commission of Queen Anne's County at the request of the County Commissioners on March 17, 1971, for a proposed amendment in regard to airports. The Planning Commission submitted its recommended amendments to the County Commissioners on May 18, 1971. The proposed amendments as prepared by the Planning Commission were as follows:
"17.14  Airfields
"In any district an airport, airfield, landing strip, seaplane base or any similarly designed area for the landing or taking off of aircraft, either as a principal use or accessary use, shall be a Conditional Use, and subject to approval of the Board of Appeals, provided that:
"(a) The area shall be sufficient to meet the *449 Civil Aeronautics Administration requirements for the class of airport proposed.
"(b) No application shall be considered, unless it is accompanied by a plan, drawn to scale, showing the proposed locations of the airport; boundary lines; dimensions; names of owners of abutting properties; proposed layout of runways, landing strips or areas, taxi strips, aprons, roads, parking areas, hangars, buildings and other structures and facilities; a sound-contour map; the location and height of all buildings, structures, trees and overhead wires falling within the airport approach zones and less than five hundred (500) feet distant from the boundary line of the airport; other pertinent data such as topography and grading plan, drainage, water and sewage, etc.
"17.141
"Every existing airport, airfield, landing strip, seaplane base or any similarly designed area for the landing and taking off of aircraft as of the date of enactment of this amendment shall be deemed a non-conforming use as of that date and shall not be extended or enlarged except by complying with the procedure of Section 17.14.

"The enactment of Sections 17.14, 17.141 and this section shall supersede all other regulations regarding airfields, airports, landing strips and the like set forth in this Ordinance, whether as an accessory or principal use." (Emphasis supplied)
The County Commissioners gave notice of a hearing by publishing the entire text of the amendments recommended by the Planning Commission, as above set forth, preceded by the following:
"NOTICE OF HEARING
"The County Commissioners of Queen Anne's *450 County hereby give notice that a public hearing will be held in its office in the Court House, Centreville, Maryland on Tuesday, June 15, 1971 at 1:30 o'clock P.M. upon the recommendation of the Queen Anne's County Planning Commission to amend the text of the Comprehensive Zoning Ordinance for Queen Anne's County, as follows:".
This notice of hearing was published for three successive weeks prior to June 15, 1971, in both The Bay Times, a weekly newspaper published at Stevensville, and the Record-Observer, a weekly newspaper published in Centreville.
The hearing on June 15 was quite well attended. Testimony was taken from 21 property owners and interested parties in addition to statements of counsel for the County Commissioners, for the Planning Commission and for Kent Island Limited Partnership, the owner of the Bay Bridge Airport.
On June 22, 1971, the County Commissioners rendered a decision in the case. The decision, after reviewing the prior proceedings and testimony taken at the June 15 hearing, stated:
"The County Commissioners find that the testimony of those opposed to airports and in particular the Bay Bridge Airport is not impressive.
"The County Commissioners find as a fact that the question of airports was not given adequate consideration at the time of the adoption of the Comprehensive Zoning Ordinance in 1964. It is further evident that there is some confusion in the use of the terms airport, landing strip, etc. in the present Comprehensive Zoning Ordinance. The County Commissioners further find that the question of the location, size and other questions involving airports, landing strips, etc. is best left to the sound discretion *451 of the Board of Appeals for consideration on a case by case basis. The County Commissioners further find that the proposed amendment with certain modifications as hereinafter more fully set forth is compatible with the comprehensive Plan for Queen Anne's County.
"For the reasons stated, it was moved by Mr. Ashley, seconded by Mr. Grollman, and unanimously resolved that the following amendment to the Comprehensive Zoning Ordinance for Queen Anne's County be adopted.
"BE IT ORDAINED, that Article 17 of the Comprehensive Zoning Ordinance be amended by adding new sections 17.14, 17.141 and 17.142 to read as follows:
"17.14  Airports
"In any district an airport, airfield, landing strip, seaplane base or any similarly designed area for the landing or taking off of aircraft, either as a principal use or accessory use, shall be a conditional use and subject to approval of the Board of Appeals, provided that:
"a. The area shall be sufficient to meet the Maryland State Aviation Commission and applicable Federal requirements for the class of airport proposed.
"b. No application for a commercial airport shall be considered, unless it is accompanied by a plan, drawn to scale, showing the proposed location of the airport, boundary lines, dimensions, names of owners of abutting properties, proposed layout of runways, landing strips or areas, taxi strips, aprons, roads, parking areas, hangars, buildings and other structures and facilities; the location and height of all buildings, structures, trees and overhead *452 wires falling within the airport approach zones and less than five hundred (500) feet distant from the boundary line of the airport. Other pertinent data such as topography and grading plan, drainage, water and sewage, etc. may be required if deemed necessary by the Board of Appeals.

"c. No application for a private, non-commercial, airport shall be considered unless it is accompanied by a plan showing the proposed location of the airport, boundary lines, dimensions, names of owners of abutting properties, proposed layout of runways, landing strips or areas, taxi strips, aprons, roads, parking areas, hangars, buildings and other structures and facilities; the location and height of all buildings, structures, trees and overhead wires falling within the airport approach zones and less than two hundred (200) feet distant from the boundary line of the airport.
"17.141
"Every existing airport, airfield, landing strip, seaplane base or any similarly designed area for the landing and taking off of aircraft whether the same be private, commercial or non-commercial existing as of the date of enactment of this amendment shall be deemed a conditional use as of that date but the same shall not be extended or enlarged except by complying with the procedures set forth in Section 17.14. Provided further, however, that any existing commercial airport shall comply with that portion of Section 17.14 which requires a plan drawn to scale: said plan to be provided to both the Board of Appeals and the Planning Commission within six (6) months of the date of enactment of this amendment.

*453 "17.142
"The enactment of Section 17.14, 17.141 and this Section shall supersede all other regulations regarding airports, airfields, landing strips, and the like set forth in this Ordinance whether as an accessory or principal use."
(Emphasis supplied)
It was also provided that the ordinance become effective as of its date, June 22, 1971.
As we have indicated, the circuit court was of the opinion that the amendatory ordinance as finally adopted was valid and denied the appellant von Lusch's petition for appeal.
The appellant raised below and before us five contentions that the ordinance, as adopted by the County Commissioners, was invalid because:
1. Of the failure to give due public notice as required by Code (1970 Repl. Vol.) Art. 66B, § 4.04.
2. Of the failure of the County Commissioners to refer the modified version back to the Planning Commission, as required by Section 21.23 of the Zoning Ordinance.
3. It is ultra vires and void for failure to accord with the statutory zoning purposes.
4. Of the failure of the County Commissioners to make requisite findings as required by Art. 66B, § 4.05 (a).
5. The findings made by the County Commissioners do not support the action taken and are not based upon substantial evidence thus making its action arbitrary and capricious and resulting in a denial of due process of law.
Inasmuch as we have concluded that the appellant is correct in regard to his first two contentions so that the order of the lower court of July 28, 1972, must be reversed for those two reasons, we do not reach and do not decide the remaining three points.

*454 1.
Article 66B, § 4.04 provides as follows:
"The local legislative body shall provide for the manner in which such regulations and restrictions and the boundaries of such districts shall be determined, established, and enforced, and from time to time amended, supplemented, modified, or repealed. However, no such regulation, restriction, or boundary shall become effective until after at least one public hearing in relation thereto, at which parties in interest and citizens shall have an opportunity to be heard. At least fifteen (15) days' notice of the time and place of such hearing shall be published in an official paper or a paper of general circulation in said jurisdiction."
We considered the requirements of a second notice and hearing when substantial changes are made in a Zoning Ordinance after the first notice and hearing in the recent case of Rasnake v. Board of County Commissioners of Cecil County, 268 Md. 295, 300 A.2d 651 (1973), decided well after Judge Turner's decision in the present case. In Rasnake, we held that where there has been a substantial difference between the proposed zoning text amendment as advertised and as ultimately proposed to be passed by the local legislative body, that body must readvertise the new and substantially different proposed ordinance and have a hearing in regard to it. The substantial difference in Rasnake was the requirement of a bond for the maintenance of mobile homes which was not included within the terms and advertised notice of hearing for the originally proposed text amendment to the Zoning Ordinance. Indeed, in the present case, we are of the opinion that the departure from the provisions of the originally proposed and advertised amendment is more striking and different than was the substantial departure in Rasnake. In short, we consider Rasnake to be controlling and dispositive on this point.
*455 In the present case, the Planning Commission originally recommended and, the proposed amendment as advertised, provided that "[e]very existing airport, airfield, landing strip, seaplane base or any similarly designed area for the landing and taking off of aircraft" as of the date of enactment "shall be deemed a nonconforming use as of that date" (Emphasis supplied) and should not be extended or enlarged except by complying with the procedure of Section 17.14, i.e., as a "conditional use" (defined in Section 3.12 as a use which may be permitted by the granting of a special exception as defined in Art. 66B). The Board of Appeals is given the power to hear and decide conditional uses (or special exceptions) as authorized by § 4.07 of Art. 66B (formerly § 22) and the Board of Appeals may impose conditions or exceptions with respect to location, construction, maintenance and operation in addition to those expressly stipulated in the ordinance as the Board of Appeals may deem necessary for the protection of adjacent properties and public interest.
As was pointed out in the testimony at the hearing on June 15, 1971, the proposed amendment to make all existing airports of every kind non-conforming uses was quite harsh in that:
(a) Non-conforming uses by virtue of Section 5.0322 of the Zoning Ordinance must be phased out within two to five years unless necessary rezoning or a special exception is obtained. By the provisions of Section 15.401, however, an accessory use legally existing in the M-1 zone even though non-conforming would not be subject to the non-conforming use provisions of the Zoning Ordinance.
(b) A sound-contour map was required by the proposed amendment to accompany an application for a special exception to validate a non-conforming use and this would cost between $500 and $1,500.
(c) The requirement that the site plan accompanying the special exception must show buildings, structures, trees and overhead wires within approach lanes and *456 within 500 feet of the airport boundaries would be quite expensive and such information within 200 feet would be adequate.
(d) A topography map to accompany an application for a special exception would cost up to $2,000.
(e) The proposed amendment would treat all commercial and private airports, airfields and landing strips alike regardless of scope or nature or magnitude of operations.
(f) No consideration was given for waiving the phasing out requirement for non-conforming airports, airfields and landing strips in zones other than M-1 as had been done in that zone by Section 15.401.
The text amendment as adopted by the County Commissioners provided for separate treatment for commercial airports and private, non-commercial airports but, more importantly, provided in Section 17.141 that every existing airport, airfield, landing strip, whether commercial or non-commercial as of the date of enactment of the ordinance, "shall be deemed a conditional use as of that date," thus purporting to grant a special exception to those existing uses without reference to the Board of Appeals and provided that this ordinance would supersede all other regulations for those uses. This action of conferring a special exception status on the uses thereby making them a permitted conforming use not subject to phasing out or other restrictions applicable to the originally proposed non-conforming use status is a most substantial change in both theory and practical application of the provisions of that ordinance to those uses. One might say that it was practically a 180 degree change of position. Such a substantial change in provisions must be the subject of another notice and hearing as we held in Rasnake.

2.
As we have already pointed out, Art. 66B, § 4.04 requires the local legislative body to provide for the manner in which amendments should be made. Pursuant to *457 this requirement, inter alia, the County Commissioners provided in Section 21.23 as follows:
"21.23 No change in or departure from the proposed amendment as recommended by the Planning Commission shall be made unless the same be resubmitted to said Commission for its further recommendation. The Planning Commission shall file its further recommendation within thirty (30) days, unless additional time is granted, after which the County Commissioners shall make their decision."
As we have already noted, Section 3.00 provides that the word "shall" is mandatory and not directory.
It is apparent that the provisions of Section 21.23 are mandatory and must be complied with by the County Commissioners. There is sound reason for this mandatory requirement, i.e., that the County Commissioners should have the benefit of the expertise of the Planning Commission in the amendatory process. The appellees seek to overcome this requirement by suggesting that inasmuch as the counsel for the Planning Commission was present at the June 15 hearing and indicated that the proposed change was, in his opinion, in accord with the thinking of the Planning Commission, no useful purpose would be served by resubmission to the Planning Commission. The short answer to this contention is that the ordinance provides mandatorily for a return to the Planning Commission, itself, the deliberation of that Commission on the proposed change and a further report by that Commission to the County Commissioners. There is no provision that counsel for the Planning Commission can give that consideration and it is clear to us that he cannot commit the Planning Commission to the approval of a change with no re-referral and consideration by the Planning Commission. It is quite true that as and when the proposed change is referred back to the Planning Commission and a further report made to the County Commissioners by that Commission, *458 the County Commissioners are not bound by that Commission's recommendations. See Bujno v. Montgomery County Council, 243 Md. 110, 118, 220 A.2d 126, 130 (1966); Miller v. Abrahams, 239 Md. 263, 272, 211 A.2d 309, 314 (1965); and 1 Anderson, American Law of Zoning § 4.32 (1968). This does not mean, however, that the County Commissioners may, in effect, accept the opinion of counsel for the Planning Commission for what he thinks the Planning Commission will conclude and recommend and ignore the mandatory provisions of Section 21.23 of the Zoning Ordinance.
For these two reasons, we have concluded that the adoption of the text amendments by the County Commissioners on June 22, 1971, creating new Sections 17.14, 17.141 and 17.142 of the Zoning Ordinance was invalid and void. As we have indicated, we do not reach or decide the other questions raised by the appellant.
In our opinion, the appellant has printed much unnecessary material in his record extract so that we have decided to require him to pay one-half of the costs of printing the record extract, the remaining costs to be paid equally by the County Commissioners and Kent Island Limited Partnership.
Order of July 28, 1972, reversed, the appellant von Lusch to pay one-half the costs of printing the record extract; the Board of County Commissioners of Queen Anne's County, one of the appellees, to pay one-half of the costs and Kent Island Limited Partnership, the other appellee, to pay the remaining one-half of the costs.