36 A.3d 1038

**Larry BOWIE, et al.**

**v.**

**BOARD OF COUNTY COMMISSIONERS OF CHARLES COUNTY, Maryland, et al.**

No. 0312, Sept. Term, 2010.

Court of Special Appeals of Maryland.

Feb. 3, 2012.

154

Kurt W. Wolfgang, La Plata, MD, for Appellant.

Mark Mudd (Roger L. Fink, John A. Buchann, Amanda E.H. Gibson, on the brief), La Plata, MD, for Appellee.

Panel: WOODWARD, ZARNOCH, CHARLES E. MOYLAN, JR., (Retired, Specially Assigned), JJ.

ZARNOCH, J.

In this Charles County zoning case, we are asked to consider the due process and open meetings limitations on a site visit of the affected property by members of a county board of appeals. This issue arises with respect to the 2009 grant of a special exception to appellee WSG Holdings, LLC ("WSG"), for construction of a "research facility" in Nanjemoy, in Charles County.

WSG leased a piece of property in Nanjemoy with the intent to build an office building, a firing range, and a driving track, which would be used for activities alternately described as "research" and "training" related to personal security. These activities are not permissible uses for the property under the Charles County Zoning Ordinance, Chapter 297, Code of Charles Co. (1994) ("Zon. Ord."), but the ordinance provides that the appellee Board of Appeals ("the Board") may grant a special exception for the operation of a research facility without the processing of materials. Zon. Ord. § 297–212 (Permissible Use No. 7.04.100). WSG's application for a special exception was opposed by appellants, residents of Nanjemoy (Larry Bowie et al.). The Board held three hearings on the matter, taking evidence from both WSG and the opposed residents. Board members also conducted a site visit on the WSG property. Both WSG and the opponents were permitted to send representatives to the visit, but the Board prohibited

others from attending and did not keep minutes or a transcript of the visit.

■ The Board ultimately approved the special exception by a 3–2 vote, and imposed several conditions intended to address the opposition's concerns regarding noise levels and environmental impact. Appellants petitioned the Circuit Court for Charles County for review of the June 9, 2009 decision, alleging procedural and substantive deficiencies. The court held a hearing on January 5, 2010, and filed a written decision on March 26, 2010, remanding the case to the Board for further proceedings and articulation of its findings on the issue of whether the proposed facility was consistent with the Charles County Comprehensive Plan. The court otherwise affirmed all other aspects of the Board's decision. Timely appeals were filed by the Nanjemoy residents, the WSG, and the Board.[1]

## FACTS AND LEGAL PROCEEDINGS

On October 29, 2008, WSG applied for a special exception to the Charles County Zoning Ordinance to operate a "research facility without the processing of materials" on an 80–acre property in Nanjemoy. Because this property was zoned "AC,"[2] such a research facility would be permitted only by special exception. *See* Charles County Zoning Map, Use No. 7.04.100. WSG submitted a statement in support of its request, in which it described the existing site as approximately 18 acres of open space and 62 acres of woodland, with four existing structures and a private airport. The northeastern edges of the property include a stream and wetland which was required to be surrounded by a minimum buffer of fifty feet

---

**1.** A circuit court's order remanding a case to an administrative agency is also an appealable final order. *Eastern Stainless Steel v. Nicholson,* 306 Md. 492, 501–02, 510 A.2d 248 (1986).

**2.** "AC" refers to an Agricultural Conservation Zone. Zon. Order § 297–87.

(the "Resource Protection Zone") of undeveloped land. Zon. Ord. § 297–171.

WSG proposed to operate a facility for the purpose of conducting "specialized research, development, testing, and evaluation services to ensure that the United States maintains technological superiority." The research and development would concern "a wide variety of defense and public safety areas to include technical courses for emergency preparedness, emergency and governmental vehicle safety and dynamics, and projectile testing that includes evaluation of personal protective equipment efficiency." To achieve these objectives, WSG sought to construct "a 50' by 75' two story building ... to house its on-site office and structures ... to conduct its research, including vehicle and firearm research." The property would be accessed by a private driveway from a nearby public road, and it would be open dusk to dawn Monday through Friday, and 7:00 a.m. until 1:00 p.m. on Saturdays.

The Board held three public hearings on WSG's application. The first was held on February 24, 2009, the second on March 10, 2009 and the last on April 14, 2009. After WSG presented its four witnesses, the Board permitted members of the public to testify. The Board advised the crowd to avoid repetitive and redundant testimony and, given the time constraints, placed a three-minute limit on individual testimony and a five-minute limit on testimony of those representing organizations. A brief recess was taken before the opposition witnesses began, and apparently the recording started midway through the sixth witness's testimony. The testimony of the first five opposition witnesses was omitted from the transcript. Including the five unrecorded witnesses, twenty six people testified in opposition to WSG's application and one resident testified in support of WSG over two hearing dates. Groups represented included the Sierra Club and the Conservancy for Charles County, a non-profit land trust.

At the end of the March 10th hearing, the Chairman of the Board moved to conduct a site visit. The Chairman stated that the Board wanted to have a representative of the commu-

nity attend the site visit, in addition to WSG's counsel, a member of WSG, an Assistant County Attorney, a staff member, and the Board members. At the suggestion of the County Attorney's Office, the Chairman added that the community could send an additional representative with planning or some other expertise. The Chairman explained:

> But we're not going to go down there and have another hearing with 100 people there. We want the representatives there and we want to see it ourselves, but it's not fair for us to even see it ourselves without members of the community and members of the Applicant's staff and that sort of thing being there present.

The motion for a site visit was unanimously approved by the Board and scheduled for March 17 at 10:00 a.m. Apparently, no members of the opposition, or other persons present, objected to the restriction placed on attendees at the site visit. However, there was no recorded vote or any recognition that the exclusion of some members of the public was subject to the procedural requirements of the State Open Meetings Law, Md.Code (1984, 2009 Repl.Vol.), State Government Article ("SG"), § 10–508(d).[3] There exists no transcript, minutes, or

---

**3.** The State Open Meetings Law generally does not apply to quasi-judicial functions of a governmental unit. SG § 10–503(a)(1)(ii). However, in 1991 the General Assembly amended the Act to make it applicable to a public body when meeting to consider "a special exception, variance, conditional use, zoning classification, the enforcement of any zoning law or regulation, or any other zoning matter." SG § 10–503(b)(2). The Attorney General has noted:

> This provision has resulted in a significant change in practice for some public bodies. Zoning appeal boards, for example, which once were outside the Act when carrying out their quasi-judicial role, are required to conduct their deliberations in open session unless one of the Act's exceptions applies, and often none will. The General Assembly unquestionably meant to legislate this result; not only is the statutory language rejected unambiguous, but the General Assembly also rejected amendments that would have permitted their deliberations to be nonpublic.

Office of the Attorney General, *Open Meetings Act Manual* ("OMA Manual") (7th ed. 2010) at 2–15. Although claiming violations of open meetings requirements, appellants did not raise a State Open Meetings violation. Nevertheless, for reasons set forth *infra*, the much interpreted State law informs our construction of the local requirements.

other official record of the site visit.[4] The Board also scheduled another hearing for April 14, 2009, and announced that the record was closed to additional evidence. Apparently two weeks after the site visit, appellants filed a Motion for Appropriate Relief complaining, among other things, that the visit was closed to the public even though material evidence was taken, that no record was kept, and that neighboring property owners were not permitted to attend.[5] In response, WSG filed a Motion of Ne Recipiatur, which the Board denied.

---

**4.** The State Open Meetings Law also provides:
 If a public body meets in closed session, the minutes from its next open session shall include:
 (i) a statement of the time, place, and purpose of the closed session;
 (ii) a record of the vote of each member as to closing the session;
 (iii) a citation of the authority under this subtitle for closing the session; and
 (iv) a listing of the topics of discussion, persons present, and each action taken during the session.
 SG § 10–509(c)(2).

**5.** Specifically, the motion alleged open meeting violations of Md.Code (1957, 2003 Repl.Vol.), Art. 66B, § 4.07 and Rule III of the Board of Appeals. Appellants also asserted:
 (1) The site visit was not conducted in a fashion to simply allow the Board to view the site. It was a forum in which the Applicant was allowed to volunteer information, make legal arguments and submit evidence. The applicant was allowed to respond to questions of the Board that were outside of simple site orientation questions.
 (2) The property was extremely wet and muddy, and Mr. Buchanan and one of the Board Members stayed back on high ground, while the group toured the property. This resulted in the Board members not all being part of the same view, or hearing the same presentation. In addition, it did not appear that anyone from the Board who was taking notes attended all aspects of the tour, for the purpose of making a record of the proceeding in order to comply with the dictates of Article 66B, Section 4.07; and
 (3) No matter how well intentioned a site visit was, it was not conducted in a fashion that afforded due process to all participants. The public was both generally excluded, as originally announced at the March 10th meeting, and protestants being specifically excluded, that is, the neighboring property owner, a Mr. Parmley, and his two sons who attempted to attend the meeting but were excluded. The violations, inadvertent as they may have been on the part of the Board, resulted in a significant boon to the applicant in its ability to introduce evidence, testimony, and argument outside the scrutiny or cross-examination of the majority of the protestants, and also outside of the closing of the record, which was closed on March 10th. The

At the April 14 hearing, the Board's Chairman explained that the purpose of the hearing was to allow both sides to summarize their cases without presenting additional evidence or testimony. The Chairman of the Board appeared to indicate that appellants' Motion for Appropriate Relief had been denied.[6] No attempt was made by anyone to rebut assertions about the conduct of the site visit made in the motion. After closing arguments, the Board approved a motion to grant the exception by a 3–2 vote, provided certain conditions were placed on the grant, including: (1) raising the berm around the firing range from eight feet to ten feet; (2) adding a ten foot berm around the driving track; (3) annual posting of environmental testing results as well as the stewardship plan on a web site; (4) requiring the special exception to run with the ownership, not the property, so, if sold, the property would have to be restored to its pre-development state; and (5) restricting operating hours to 8:30 a.m. to 5:30 p.m. on weekdays and 8:30 a.m. to 1:00 p.m. on Saturday. On June 9, 2009, the Board issued a written decision and order. It made no mention of appellants' Motion for Appropriate Relief. However, it did refer to the site visit and those who attended. Specifically, the decision noted: "Based upon this visit, the

---

testimony and evidence presented at the March 17th site visit was subject to no cross examination, no re-direct examination, and no re-cross examination as required by the Board's rules.

Among the forms of relief requested were the following:

(1) The Board of Appeals should attempt to create a document summarizing what transpired during the March 17th site visit, including any factual representations or legal arguments made the applicant [or] its counsel. This document should be entered into the public record of the proceeding; and

(2) The Board should re-open the record and allow for reasonable cross-examination of the applicant's witnesses . . .; and

(3) [Because] [t]he applicant has supplemented its evidence in the site visit[,] [i]t should not be able to submit further evidence, except in rebuttal.

**6.** The Chairman of the Board appeared to confuse the Motion for Appropriate Relief with another request appellants' counsel had made of the Board. In any event, he said: "So, we granted part of your motion and didn't grant the other part."

Board found the site consistent with the applicant's testimony and the site plan...."

Nanjemoy residents opposing the exception promptly filed a Petition for Judicial Review in the Circuit Court for Charles County, asserting that the Board failed to follow its own procedural rules in conducting the hearing, that no reasonable person could conclude that the proposed development fit within the legal requirements for a special exception and that the Board's site visit violated due process and open meetings requirements. After a hearing, the court, on March 29, 2010, issued a written opinion and ordered a remand of the case to the Board for further proceedings to determine whether the proposed use was in accordance with the objectives of the current Comprehensive Plan. The court further instructed the Board to articulate and explain its conclusions on that issue. As to the other contentions, the court found that the evidence was sufficient to support the decision to grant WSG a special exception. The court rejected the allegations of procedural deficiencies in the hearings and site visit. Specifically, the circuit court indicated that the appellants had not preserved the site visit issue for review.[7] The decision was appealed by the opponents, the Board, and WSG.

## QUESTIONS PRESENTED

Appellants present the following questions for our review:

---

7. The court's opinion stated:

 The first objection to either the occurrence of the March 17 site visit or to the manner in which it was conducted appears in the petition for judicial review. The visit had occurred before the April 14 Board meeting at which argument was had over what evidence submitted on or after March 10 would be received or rejected, summations were made and Board members cast their votes on the application. In the petition it is contended that the March 17 site visit was in effect a closed hearing from which the public was excluded, of which no record was preserved and at which substantive evidence was presented by Applicant and improperly received by the Board. At the January 5 hearing before the Court counsel who were present at the site on March 17 could not agree as to who said what during the event. Under these circumstances it cannot be said that the party(-ies) now complaining of the process properly made a record (at least on April 14) and preserved the issue for review.

1.[Did] the Board's failure to adhere to applicable statutes and its own rules, its failure to permit cross-examination, its limitation of opposition witnesses to three minutes of testimony while allowing the applicant unlimited time, and its conduct of a "site visit" at which the public at large was excluded, individually and collectively constitute a denial of due process to opponents of the special exception such that the decision of the Board must be vacated?

2. [Could a reasonable mind] construe the evidence of record as supporting the Board's determination that the WSG-proposed facility is a permitted research facility and not a prohibited training facility?

3. [Could a reasonable mind] construe the evidence of record as supporting the Board's determination that the activities proposed by WSG would not have adverse environmental impacts?

4. [Did] the Board properly interpret[ ] the Charles County Code requirement that research permitted by special exception can be conducted in a "structure" when it held that an open area surrounded by a fence or a berm is a structure?

In their cross-appeal, appellees add the following question for review:

5. Did the lower court err in remanding for a limited purpose under the facts of this case?

For the reasons discussed below, we reverse the decision of the Board on narrow grounds involving the Board's site visit and need not resolve the other issues presented, including appellees' cross-appeal.

## DISCUSSION

### A. Standard of Review

■■■■ We review the Board's decision and not that of the circuit court. *P Overlook, LLLP v. Bd. of County Comm'rs.*, 183 Md.App. 233, 247, 960 A.2d 1241 (2008). And we review that decision to determine "whether there was substantial

evidence in the record as a whole to support the agency's factual findings and conclusions and whether the agency's decision is based upon an erroneous conclusion of law." *Singley v. County Comm'rs,* 178 Md.App. 658, 676, 943 A.2d 636 (2008). The record must contain findings of fact that are "meaningful and [do not] simply repeat statutory criteria, broad conclusory statements, or boilerplate resolutions." *Bucktail, LLC v. County Council of Talbot County,* 352 Md. 530, 553, 723 A.2d 440 (1999). If the Board erroneously applied the law or its conclusion is not based on sufficient evidence, the decision is arbitrary and capricious and must be reversed. *Bd. of Cnty. Comm'rs for St. Mary's Cnty. v. Southern Res. Mgmt.,* 154 Md.App. 10, 26, 837 A.2d 1059 (2003).

### B. Open Meetings/Due Process Limitations on Site Visits

Appellants contend that the Board violated due process and open meetings requirements by conducting a meeting closed to some members of the public at which the merits of the case were discussed, not made a part of the record, but nevertheless relied upon by the Board. We agree that the Board erred.

#### 1. Preservation

■ Appellees argue and the circuit court found that the challenge to the site visit was not preserved for judicial review. The appellees emphasize that appellants did not object at the March 10th hearing to appointing representatives of the public. The circuit court said that 1) the site visit issues were raised for the first time in the petition for judicial review; 2) appellants did not properly make a record before the Board regarding these contentions; and, 3) counsel for the parties were unable to agree "as to who said what during the event."

■ Turning first to the circuit court's conclusions, we think it is apparent that appellants raised the site visit issue in the Motion for Appropriate Relief filed approximately two weeks after the inspection and approximately two weeks be-

fore the April 14, 2009 hearing. That motion was denied by the Board. Moreover, it was not the appellants' obligation to make a record of what happened at the site visit. As the authorities discussed *infra* indicate, that burden is one for the Board to bear.[8] This is a particularly important obligation in light of the fact that in the circuit court, counsel for the parties could not agree as to what occurred during the site visit.

Appellees' preservation objections also do not pass muster. Appellants' counsel, by not objecting to attendance at the site visit only by representatives and to a partially closed meeting, could not possibly have made such an agreement for those members of the public in attendance at the March 10th hearing that he did not represent and for those members of the public allegedly seeking admission to the March 17th site visit. In short, we find that appellants' objections to the site visit are preserved for our review.

### 2. Caselaw on Site Visits

It is a "common practice" for boards of appeal to visit the property involved in applications for relief from zoning restrictions. Patricia E. Salkin, *American Law of Zoning* (5th ed. 2011) at § 40:38. It is said that such visits "serve to freshen recollections and shape the board's perception of the specific problem in issue." *Id.* Nevertheless, caselaw in Maryland and elsewhere recognizes that without the exercise of caution, legal problems may arise from such visits.

In *Heath v. Baltimore*, 187 Md. 296, 49 A.2d 799 (1946), the Court of Appeals ordered reversal of the decision of a board of zoning appeals on a special exception application because the board "made a study of the premises and neighborhood" with no supporting evidence upon which to base its judgment. *Id.* at 305, 49 A.2d 799. In *White v. North*, 121 Md.App. 196, 708 A.2d 1093 (1998), *vacated on other grounds* 356 Md. 31, 736

---

8. Section 4.07(c)(5)(i) provides that "[a] board of appeals shall make a transcript of all proceedings...." And Rule V of the Board's Rules of Procedure also states: "The Board of Appeals will cause to be prepared an official record of its proceeding in each case...."

A.2d 1072 (1999), this *Court said of a visit by the* Anne Arundel County Board of Appeals:

> We speculate, based on certain of the Board's findings and conclusions, that it may have seen conditions or things on its "on-site inspection" that affected its judgment, but which facts, information, or observations it did not include properly in the record. Obviously, we cannot consider in aid of determining whether the Board's decision is affirmable anything that is not in the record. To the extent the Board obtains information from such an "on-site inspection," and such information is not already a matter of record in the pending case and is material to the ordinance requirements and the Board's decision, the Board would do well for itself and parties before it in the future to conceive of a technique to supplement the record with such evidence before rendering its decision. In doing such, the Board needs also to be mindful of the right of opposing parties to be apprised of that additional evidence, and given an opportunity to respond.

*Id.* at 229, 708 A.2d 1093.[9]

More recently, in *Powell v. Calvert County,* 137 Md.App. 425, 430, 768 A.2d 750 (2001) *reversed and remanded on other grounds,* 368 Md. 400, 795 A.2d 96 (2002), we described the rationale of an earlier unreported decision where we ordered a remand to a county board of appeals:

> In doing so, applying the standard of judicial review of an administrative decision, we observed that the Board had

---

**9.** A backdrop in this case was an Anne Arundel County ordinance which provided:

> Upon request of any party or upon its own motion, Board members may visit the site which is the subject of the appeal. Parties and their representatives may be present to observe, but no testimony may be taken. The parties or their representatives are prohibited from engaging in any discussion with Board members at the site visit. Board members are prohibited from engaging in any discussion with the parties or their representatives at the site visit. A member who has not participated in the site visit prior to the Board's vote on the appeal may not participate in the decision.

Anne Arundel County Code (1997), § 4–101(g).

made a visit to the site but included no information in the record relating to that visit. It was unclear whether the Board relied on information obtained in that site visit. Accordingly, because the record was deficient in that the Board may have relied on matters not contained in the record, we remanded the matter for further proceedings.

Relevant out-of-state authorities share these concerns. For example, Vermont's highest court has said that "site visit observations on which the factfinder intends to rely must be placed on the record in order to preserve the right of rebuttal and to facilitate review." *In re Quechee Lakes Corp.*, 154 Vt. 543, 580 A.2d 957, 962 (1990).[10] In *Committee for Washington's Riverfront Parks v. Thompson*, 451 A.2d 1177 (D.C. 1982), the District of Columbia Court of Appeals, after characterizing the site visit issue as one of "administrative due process," *id.* at 1182, noted:

> Where, as here, a site visit is conducted to obtain information material to issues raised in the adjudicatory proceeding, the agency should conduct the visit on the record in the presence of the parties. . . . Where an off-the-record site visit is conducted by an agency in the absence of the parties, however, a subsequent hearing may cure the defect. At such a hearing the agency should set forth the facts it considers to have been revealed as a result of the inspection. It should then give the parties the opportunity to address themselves to these facts by evidence or argument.

*Id.* (Citations, quotations and brackets omitted).

In *Noble v. Kootenai County*, 148 Idaho 937, 231 P.3d 1034 (2010), Idaho's highest court addressed allegations of both due process and open meetings violations in connection with a zoning body's site visit. After rejecting the procedural due process challenge because, for among other reasons, "a record was made of the site visit," *id.* at 1039, the court nevertheless

---

**10.** In this case, the Vermont court found that the question had been waived because it had not been raised in a post-decision motion. *Id.*

determined that open meeting requirements had been disre-garded:

> It cannot be said that the Board made a good faith effort to conduct its site visit in a manner that was open to the public in any meaningful way. Idaho's open meetings laws, *I.C. § 67–2340, et seq.*, are designed to allow the public to be present during agency hearings. At the very least this means that the public must be permitted to get close enough to the hearing body to hear what is being said. It is clear that the Board did not wish for the public to partici-pate in the site viewing, as far as providing comments or presenting evidence, and in attempting to avoid this the Board precluded the public from even listening to the hearing.

*Id.* at 1040.[11]

A leading zoning treatise has summarized the obligations of a board of appeal with respect to site visits:

> If the board relies upon knowledge acquired through an inspection of the premises, and not otherwise disclosed in the record, the facts thus discovered by the board must be disclosed. The personal knowledge of the board must be spread on the record, or such knowledge will not support a conclusion of the board.... Failure to disclose such knowl-edge and to afford the parties an opportunity to refute it may constitute a denial of due process of law.

Salkin, *American Law of Zoning, supra* at § 40:38.

### 3. Open Meetings Violation

■ Appellants contend that the Board violated § 4.07(c)(4) of Article 66B ("All meetings of a board of appeals shall be open to the public") and Rule III of the Board's Rules, which provides in relevant part:

> The Board of Appeals may meet in a closed session for any reasons specified in the Maryland open meetings law, codi-

---

11. The Idaho court did not overturn the zoning action because the appellant had another opportunity to obtain the zoning board's approv-al of its request." *Id.* at 1040.

fied at Section 10–501, *et. seq.* of the State Government
Article of the Annotated Code of Maryland, see Attachment
A. However, in that regard all hearings shall be held in open
public session and no evidence, argument, or other matter
shall be received by the Board in a closed session, and no
party in interest shall be heard by the Board of Appeals in a
closed session. All evidence shall be presented to the Board
of Appeals in hearings open to the public. The hearings will
be electronically recorded.

Section 4.07(c)(4) was first enacted in 1933, Chapter 599,
*Laws of 1933*, decades before the advent of the State Open
Meetings Law. Nevertheless, unlike the more recent enact-
ment, it appears to contain no exemptions. If more stringent
than State law, it would apply even if it conflicted with that
statute. SG § 10–504 ("Whenever this subtitle and another
law that relates to meetings of public bodies conflict, this
subtitle applies unless the other law is more stringent.")

Rule III of the Board appears to incorporate the require-
ments and exemptions of the State Open Meetings Law.
However, the Board does not rely here on any exemption from
open meetings requirements. Moreover, none of the exemp-
tions contained in SG § 10–508 would have applied in any
event, even if the Board had followed the proper procedure in
invoking them.[12] *See* n. 3 and accompanying text.

In our view, when it conducted the site visit, the Board held
a "meeting" within the meaning of the above provisions. As
the Attorney General has noted with regard to the State Act:

> A meeting can also occur in unconventional venues. For
> example, if a quorum of a public body rides together in a
> vehicle and conducts public business while doing so, they
> are holding a meeting. If the meeting is one that the public
> is entitled to observe, the public body has violated the Act,
> for obviously the public cannot gain access to the meeting
> site. OMA Manual at 2–7.

---

**12.** In this case, we need not decide whether Rule III, with its exemp-
tions, conflicts with § 4.07(c)(4) of Article 66B which appears to have
none.

Clearly, the Board was transacting public business during the site visit.

The open meeting requirements relied upon by the appellants, like the State Act, do not recognize the concept of a partially open, partially closed meeting. *See* OMA Manual at 4–1. (When the Act requires a meeting to be open, it must be open to all. The Act does not contain an intermediate category of partially open meetings, to which some members of the public are admitted and others excluded.) (quotations, ellipses and citations omitted).

The record is unclear whether those present at the March 10, 2009 hearing unequivocally and permanently waived their right to attend the site visit. But even if such a waiver could be binding, the Board could not exclude others from attending the session. Unrebutted in the record is the assertion by appellants that on March 17, 2009, a neighboring property owner and his sons were denied admission to the site.

█ The fact that the site visit occurred on private property does not transform the Board's meeting into an event exempt from open meetings requirements. A public body cannot avoid open meeting requirements by meeting on private property to conduct public business. For these reasons, we conclude that the March 17, 2009 site visit violated the open meeting requirements of § 4.07(c)(4) and Rule III.

### 4. Due Process Violation

█ We now turn to appellants' due process challenge to the Board's reliance on the site visit in its decision to grant the special exemption. The Board's written decision and order state that based upon the site visit it "found the site consistent with the applicant's testimony and the site plan. . . ." This is no substitute for a record of what happened on March 17, 2009. Such a record would have informed the parties and a reviewing court of the evidence gathered from the site visit that led the Board to credit the applicant's testimony and approve its site plan. Failure to disclose this information and to allow the appellants to challenge this evidence through

cross-examination or other means constituted a denial of due process.

## CONCLUSION

For all of these reasons, we believe the decisions of the circuit court and the Board must be reversed and the case remanded to the Board for another hearing and decision.[13] In so doing, we do not mean to suggest that the Board acted in bad faith or engaged in intentional wrongdoing. However, due process and open meeting requirements can be violated even by unintentional acts. Finally, on remand, it would be up to the Board to decide whether to hold another site visit, one that is tightly controlled, open to the public and on the record.[14]

**JUDGMENT REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR CHARLES COUNTY FOR REMAND TO THE BOARD OF APPEALS FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEES.**

---

**13.** In light of this disposition, we need not address the other contentions of the parties.

**14.** WSG has moved to strike appellants' reply brief and appendix. Because we do not rely on any material in this brief, we deny the motion.