57 A.3d 463

**WSG HOLDINGS, LLC**

v.

**Larry BOWIE, et al.**

No. 22, Sept. Term, 2012.

Court of Appeals of Maryland.

Dec. 19, 2012.

**600**

Mark D. Mudd (Mudd, Mudd & Fitzgerald, P.A., La Plata, MD), on brief, for petitioner.

Kurt W. Wolfgang (Law Office of Kurt Wolfgang, Chtd., La Plata, MD; Robert A. O'Neil and Denise Goulet of Miller, Balis & O'Neil, PC, Washington, DC), on brief, for respondents.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and McDONALD, JJ.

BATTAGLIA, J.

In this case, we have been asked to consider whether the Board of Appeals for Charles County, Maryland,[1] in conducting an in-person inspection of the subject property of an application for a special exception[2] to the property's zoning classification, violated various open meeting provisions, includ-

---

1. The Board of Appeals for Charles County is tasked with hearing and deciding appeals from final decisions of administrative officers in zoning matters, applications for special exceptions and variances from the County Zoning Ordinance and other zoning and land use matters as prescribed in the State and County Code. *See* Charles County Code § 297–409 (1994, 2003 Supp.). Unless otherwise noted, all references to the Charles County Code are to provisions of Chapter 297 of the Charles County Code (1994, 2003 Supp.).

2. A special exception "refers to a permissive land use category authorized by a zoning or administrative body pursuant to the existing provisions of the zoning law and subject to guides, standards and conditions for such special use which is permitted under provisions of the existing zoning law." Stanley D. Abrams, Guide to Maryland Zoning Decisions § 11.01 at 11–2 (5th ed.2012).

ing the State Open Meetings Act, Sections 10–501 through 10–512 of the State Government Article, Maryland Code (1984, 2009 Repl.Vol.),[3] those in Section 4.07 of Article 66B, Maryland Code (1957, 2003 Repl.Vol.),[4] Sections 297–412 and 297–415 of the Charles County Code (1994, 2003 Supp.),[5] and the Charles

---

**3.** The State Open Meetings Act was not raised in the Circuit Court, so we shall not address it.

**4.** Section 4.07 of Article 66B, Maryland Code (1957, 2003 Repl.Vol.) states in relevant part:

(a) *Composition; appointment, terms, compensation and removal of members; vacancies.*—(1) Each local legislative body shall provide for the appointment of a board of appeals.

\* \* \*

(c) *Rules; meetings; administering oaths; summoning witnesses; records.*—(1) A board of appeals shall adopt rules in accordance with the provisions of any ordinance adopted under this article.

(2) The meetings of a board of appeals shall be held at the call of the chairman and at other times determined by the board.

\* \* \*

(4) All meetings of a board of appeals shall be open to the public.
(5)(i) A board of appeals shall make a transcript of all proceedings, showing the vote of each member on each question, or the member's absence or failure to vote.
(ii) 1. A board of appeals shall immediately file the transcript of its proceedings in the office of the board.
2. A transcript shall be a public record.

\* \* \*

(d) *General powers.*—A board of appeals shall have the following powers:

\* \* \*

(2) Hear and decide special exceptions to the terms of an ordinance on which the board is required to pass under the ordinance[.]
Unless indicated otherwise, all references to Article 66B are to Maryland Code (1957, 2003 Repl.Vol.). Section 4.07 of Article 66B has been repealed and recodified without substantive change in various sections of Title 4 of the Land Use Article, Maryland Code (2012).

**5.** Section 297–415(E) of the Charles County Code (1994, 2003 Supp.) states, in relevant part, "[t]he Board of Appeals shall conduct a public hearing and issue a written decision on the application which contains findings of fact and conclusions of law to support the Board's decision." Section 297–412, titled "Public hearing required," states:

A. Before making a final decision on any appeal or application, the Board shall hold a hearing on the matter to be considered.
B. The hearing shall be open to the public, and all people aggrieved by the outcome of the appeal or application shall be given an

County Board of Appeals Rules of Procedure.[6]

WSG Holdings, LLC ("WSG"),[7] Petitioner herein, sought an exception from the Charles County Zoning Regulation to build

opportunity to present testimony and evidence and to cross-examine persons who testify.

C.   The Board may place reasonable and equitable limitations on the presentation of testimony and evidence, arguments and the cross-examination of witnesses consistent with the rules and regulations adopted under § 297–409 so that all relevant issues may be heard and decided without undue delay.

D.   The Board may continue the hearing until a subsequent meeting or date and time certain and may keep the record of the hearing open to receive additional evidence or information.   The record shall be closed prior to when the Board issues its written order.

E.   Any interested person shall have the right to submit, in accordance with the established rules, oral or written testimony at the public hearing.   A record of the case file, including a complete record of the testimony at the hearing, the votes of all members of the Board, all properly marked exhibits presented at the hearing and the application, will be kept by the Zoning Officer.

6.   Rule III of the Rules of Procedure of the Board of Appeals for Charles County (May 9, 2000) stated, in pertinent part:

III.   *SESSIONS AND HEARINGS.*   The Board of Appeals will hold such sessions and hearings as may, from time to time, be scheduled by the Chairperson or his/her designee.

The Board may conduct such preliminary hearings as are deemed necessary by the Chairperson.   The Board of Appeals may meet in a closed session for any reason specified in the Maryland open meetings law, codified at Section 10–501, *et. seq.* of the State Government Article of the Annotated Code of Maryland.... However, in that regard all hearings shall be held in open public session and no evidence, argument, or other matter shall be received by the Board in a closed session, and no party in interest shall be heard by the Board of Appeals in a closed session.   All evidence shall be presented to the Board of Appeals in hearings open to the public.   The hearings will be electronically recorded.

Unless otherwise noted, all references to the Rules of Procedure are to the Rules of Procedure of the Board of Appeals for Charles County (May 9, 2000).   The May 9, 2000 version of the Board Rules of Procedure has been superceded by a more recent version in which the relevant portions remain unchanged.

7.   WSG Holdings, LLC represents itself as a subsidiary of Washington Security Group, Inc., which conducts technological research, development, testing and evaluation services focusing on preventing chemical and biological attacks against the United States and protecting U.S. Government personnel overseas in combat zones and on diplomatic assignment.

an office building, gun range, and driving track to conduct tactical research on a parcel of land in Nanjemoy, a rural community in southwestern Charles County. The property was subject to zoning restrictions [8] that prohibited such activity except as authorized by the Charles County Board of Appeals ("Board") through a special exception. In order to undertake the development, WSG applied to the Board for a special exception and was opposed in its application by various citizens, some of whom remain as Respondents herein. In deciding upon the application for special exception, the Board held three public hearings, taking testimony and accepting documentary evidence from WSG and the citizens. The Board also conducted one trip to the property in question, which has been referred to by the parties as a "site visit" and which is the subject of this case.[9] The Board allowed representatives from WSG as well as two citizens to attend, but it prohibited any other members of the public from attending and kept no transcript or other record of that which transpired.

The Board granted WSG's application, and various individuals jointly filed a petition for judicial review in the Circuit Court for Charles County, contending among other things, that the Board conducted the visit to the subject property in a manner that was closed to the public in violation of Article 66B, the Charles County Code, and the Board Rules of Procedure.[10] The Circuit Court remanded the case to the

---

8. Charles County Code § 297–87.

9. The parties refer to the Board's trip to the property as a "site visit." A site visit has been described as the undertaking by a board of appeals "to visit the premises involved in pending applications for administrative relief, and to examine the area surrounding such premises." Patricia E. Salkin, American Law of Zoning § 40:38, at 40–116 (5th ed.2012).

10. The caption of the Petition for Judicial Review listed the following names: Larry Bowie, George and Arlene Bowie, Jo Ann Bowie, Gerald Grinder, James Cottrill, David Maines, Ramona Millar, Scott Hurley, Erik Doctrow, Linda Wright, Michael Tjeuer, Mala Tominac, Selma Doctrow, Calvin Wright, James Lockleer, Michael and Kathleen Moreland, Kevin Metcalf, Phillip Terry, Norman and Peggy Palmer, Kenneth Kraushaar, Charles E. Parmley, Nanjemoy Potomac Environmental

Board for an articulation of its findings regarding the consistency of the proposed use with the Charles County Comprehensive Plan,[11] but affirmed the decision of the Board in all other aspects. Respondents appealed, and both WSG and the County cross-appealed to the Court of Special Appeals, which, in a published opinion, held that the Board violated the open meetings provisions of Section 4.07 of Article 66B and Rule III of the Board Rules of Procedure, reversed the decision of the Circuit Court and remanded to the Board for a new hearing and decision. *Bowie v. Bd. of County Comm'rs of Charles County*, 203 Md.App. 153, 170–71, 36 A.3d 1038, 1048 (2012).

WSG filed a Petition for a Writ of Certiorari presenting the following three questions:

1. Did the Court of Special Appeals err when it found that objections to the site visit were preserved for appellate review, and that there was no recorded vote or any recogni-

---

Coalition, Inc., Nanjemoy Vision, Inc., Randy Roe, Adam Jentilet, Richard Viohle, Jr., Roy Squires, Chad and Jamie Stoltz, and Robert O'Neil.

They were described in the Petition:

Some Petitioners were a party to the proceeding before the Board of Appeals for Charles County, Maryland including Robert O'Neil. Some of the Petitioners are adjacent property owners, such as Adam Jentilet, Ramona Millar, and Randy Roe. The two corporate petitioners are not for profit 501(c)(3) Maryland corporations. Nanjemoy Vision, Inc. (NVI) addresses issues of land use and planning for Nanjemoy. Nanjemoy Potomac Environmental Coalition, Inc. (NPEC) addresses environmental matters. All Petitioners are aggrieved by the decision of the Board of Appeals.

The Circuit Court dismissed all but the following individuals, who remain as Respondents in this action: Larry Bowie, George and Arlene Bowie, Gerald Grinder, James Cottrill, Scott Hurley, Erik Doctrow, Linda Wright, Calvin Wright, Michael and Kathleen Moreland, Kevin Metcalf, Philip Terry, Norman and Peggy Palmer, Kenneth Kraushaar, Charles E. Parmley, Randy Roe, Adam Jentilet, Chad and Jamie Stoltz, and Robert O'Neil. For the sake of brevity, we shall collectively refer to those who remain as "Respondents."

11. According to the Circuit Court, the County's Comprehensive Plan guides development in Charles County and ensures protection of environmentally sensitive areas by restricting development to locations away from the County's waterfront and encouraging low-impact development.

tion that the exclusion of some members of the public were subject to the procedural requirements of the state open meetings act?

2. Did the Court of Special Appeals err when it found that the March 17, 2009 site visit violated the open meeting requirement?

3. Did the Court of Special Appeals err in its decision to reverse the judgment and remand the matter to the Board for another hearing and decision without further instruction to the Circuit Court and Board?

We granted the Petition. 426 Md. 427, 44 A.3d 421 (2012).

We shall hold that Respondents preserved their objections to the site visit under the public meetings provisions of Section 4.07 of Article 66B, Sections 412 and 415E of Chapter 297 of the Charles County Code, as well as Rule III of the Board Rules of Procedure. We shall further hold that the site visit constituted a "meeting" which was required to be open to the public by Section 4.07(c)(4) of Article 66B, as implemented in the Charles County Code, and Rule III of the Board Rules of Procedure. Because the Board violated the open meeting provisions of Article 66B, the Charles County Code, and Rule III of its own Rules of Procedure, we shall remand the matter to the Board for a new hearing, thus affirming the Court of Special Appeals.

The property in question, described by WSG in its application for a special exception, is an 80 acre tract of land consisting of approximately 18 acres of open space and 62 acres of woodland [12] located in Nanjemoy. WSG intended to build a facility consisting of a firing range, a driving track, and an office complex in which to conduct research. The property

___

**12.** The northeastern edges of the property contain a stream and wetlands and are classified as a Resource Protection Zone under Sections 297–167 to 297–182 of the Charles County Code. Resource Protection Zones serve to "protect stream valley habitat and stream water quality," Section 297–167, and require that certain buffers of undisturbed land surround the areas that are so classified, depending on the size and characteristics of the watershed. Section 297–170.

was zoned as an Agricultural Conservation Zone,[13] and as such, the operation of such a facility is not permitted except by special exception granted by the Board.[14] WSG submitted its application dated October 22, 2008, and the Board held three public hearings on the application, one on February 24, 2009, another on March 10, 2009, and a third on April 14, 2009.

At the first hearing, WSG presented four witnesses who testified about the utility of the proposed site for the intended purposes, that the site would be used only for tactical research, rather than for training, and that no real biological and chemical agents would be used. Regarding the impact of the firing range and tactical driving course on the surrounding environment, neighboring landowners, and the rest of the Nanjemoy community, one of WSG's witnesses opined that the firing range would be enclosed in such a way that there would be no impact on the surrounding wetlands and no escaping bullets and that the site would be engineered so that noise from the firing range and the driving course would not affect neighboring landowners.

---

13. An Agricultural Conservation Zone is defined in Section 297–87 of the Charles County Code:

The Agricultural Conservation Zone provides a full range of agricultural and farming activities, protects these established uses from encroaching development which might adversely affect the agricultural economy of the county and encourages the right to farm in the county without undue burden on the landowner. The zone is to prevent premature urbanization in areas where public utilities, roads and other public facilities are planned to meet exclusively rural needs and where present public programs do not propose public facility improvements suitable for development at higher densities. This zone provides for certain agriculture-related commercial and industrial uses with special conditions. Such uses are to accommodate flexibility in the use of lands by those persons or organizations that pursue agriculture activities and/or earn their income from agriculture when these uses are not in conflict with the protection of farmland and support protection of the farm economy. The zone protects existing natural resources and scenic values and provides limitations on residential development and encroachment in these areas dominated by agricultural uses.

14. Charles County Code, Section 297–212, Permissible use No. 7.04.100.

Members of the public testified, but were limited by the Board to three minutes for each individual and five minutes for each group. Over the course of the first two hearings, thirty people testified, including twenty-two who opposed the facility. Some opponents asserted that the site was not fit for the facility contemplated by WSG [15] and specifically noted that such uses were normally confined to much larger tracts of land. They further contested the extent of the environmental impact, citing concerns about noise pollution and wetlands devastation. Additional opponents' testimony asserted that the site would transform the scenic character of the community and that allowing such development would destroy the integrity of the "longest undeveloped shoreline in the Mid–Atlantic region." Contending that gunfire and screeching tires would affect their property values and their quality of life, the opposition additionally testified that the Nanjemoy community was not equipped to absorb the increased traffic that the facility would generate.

At the March 10, 2009 hearing, a petition containing over three hundred signatures of "citizens and residents of Nanjemoy and Charles county [sic]" was submitted to the Board, requesting that the Board deny WSG's special exception application.[16] Additionally, Robert O'Neil,[17] a Nanjemoy landown-

---

**15.** Of the thirty who testified, all opposed WSG's application except for Charles Coghlan, who stated that he supported the proposed use. Before the opposition witnesses began, the Board took a recess, and apparently the recording of the testimony began in the middle of the sixth witness's testimony. Testimony of the first five people in opposition to the application was omitted from the transcript.

**16.** The petition was submitted by Dr. Chad Stoltz, a Nanjemoy resident, on behalf of citizens who opposed the application because they contended that the proposed use would be "detrimental [to] the public health, safety and general welfare; use, peaceful enjoyment, economic value and development of surrounding properties and general neighborhood," and that it would "cause objectionable traffic noise and fumes, odors, dust, and possibly hazardous materials in the environment." Dr. Stoltz also submitted a study regarding appropriate practices for containing small arms firing ranges, a U.S. Environmental Protection Agency Best Practices Manual for Lead at Outdoor Shooting Ranges, and pictures of wildlife present at the proposed site, all to support his

er, filed an opposition brief arguing that the application should be denied, contesting WSG's intention to use the property for research, and asserting that WSG instead sought to perform tactical training at the site. Mr. O'Neil also contended that WSG should have filed multiple applications because the proposed development contained several different uses, each of which would have an inordinate impact on the Nanjemoy community especially with regard to pollution in the form of hazardous metal runoff and noise.[18]

After the testimony concluded and documents were submitted, the Chairman of the Board proposed visiting the land in question, suggesting that the Board, along with its counsel, representatives of WSG, and select members of the opposition, travel to the property to see "its proximity to everything else and the topography and that sort of thing." The Chair discussed the logistics of the excursion, stating that it would not be open to the general public but that a representative could attend:

CHAIRMAN MOWER: I would like to have one representative from the community meet us there or it can be Mr. Wolfgang [counsel for neighboring landowner Robert O'Neil,] if you all so choose, Mr. Mudd, [WSG's counsel,] Mr. Buchanan, [county attorney acting as counsel to the

argument that the gun range would significantly impact the local environment.

17. According to the document containing questions and sworn answers submitted to the Board as an addendum to his opposition brief, Robert O'Neil was a landowner in Nanjemoy and was the last person scheduled to speak at the February 24 hearing. Mr. O'Neil was not permitted to testify because of time concerns, according to the Chair. Mr. O'Neil subsequently retained Kurt Wolfgang to represent him, thereafter, before the Board and present on his behalf.

18. Mr. O'Neil attached, as exhibits to the brief, documents including (1) a GSA contract evidencing that "the Applicant has already contracted with the U.S. Government to use the site as both a training site and an airport in violation of current zoning laws[;]" (2) evidence from WSG's website that its "primary function is training"; and (3) the Nanjemoy Vision Plan, an informal plan outlining the intent of Federal, State, and County government to preserve the rural heritage and pristine environment on Nanjemoy.

Board,] a member of the staff and the Board members. Was there anybody else?

MR. BUCHANAN: Mr. Mudd can pick one member from Washington Security Group.

CHAIRMAN MOWER: Right.

MR. BUCHANAN: Mr. Wolfgang, and if he wants to select somebody with expertise or something. . . .

CHAIRMAN MOWER: Right, right. But we're not going to go down there and have another hearing with 100 people there. We want the representatives there and we want to see it ourselves, but it's not fair for us to even see it ourselves without members of the community and members of the Applicant's staff and that sort of thing being there present, also.

The Chair, thereafter, called for a representative of the citizens to be selected and assigned Dr. Chad Stoltz to that role, apparently using some measure of applause from those present and a name shouted by an unidentified audience member:

CHAIRMAN MOWER: Okay. Now, is there someone that the people in opposition to this would like to appoint to represent them at this meeting? Yes?

UNIDENTIFIED FEMALE: (Inaudible) I don't know his name, but he's a Ph.D. and he seemed quite knowledgeable. I would request that he go.

UNIDENTIFIED MALE: (Inaudible).

(Applause).

CHAIRMAN MOWER: Doctor, what was your last name, sir?

DR. STOLTZ: Stoltz.

MR. BUCHANAN: You can get with Mr. Wolfgang and he'll show you where to meet. . . .

The Chair closed the record, and also set the final hearing for April 14, 2009 at which time a vote would be taken on WSG's application. The Board never discussed that the visit to the property was subject to any public meetings provisions or procedural mandates, never took a vote to limit attendance at

the property, nor does the record reflect that anyone present objected to the restrictions placed on public attendance at the visit. The motion for the visit was approved by the Board and scheduled for March 17, 2009 at 10:00 a.m.

On March 17, 2009, the Board conducted its visit. The participants included the entire Board, two representatives from WSG, including its attorney, as well as Kurt Wolfgang, counsel for Robert O'Neil and Dr. Chad Stoltz.[19] An adjoining property owner, Charles E. Parmley, attempted to join the group gathered at the site, but was denied access.

No record was kept of the March 17, 2009 visit to the property, and contentions abound as to what transpired.[20]

---

19. The Board-of Appeals listed the participants of the visit in its Findings of Fact and Conclusions of Law in its Decision and Order:
   - Frederick Mower (Board of Appeals Chairman), Luke Hannah (Vice Chairman) and Kenneth Cross, John Pearl Yates, Edward Baker (Members)
   - Reed Faasen (Acting Planning Director), Kirby Blass (Case Planner) and John Buchanan (Assistant County Attorney)
   - Sean Miller, Chief Operating Officer, Washington Security Group (Applicant) and Mark Mudd, Esquire [Counsel for WSG]
   - Kurt Wolfgang, Esquire (Counsel for the Opposition) and community representative, Dr. Cha[d] Stoltz (chosen by the Opposition).

20. In their Memorandum supporting their Petition for Judicial Review, Respondents described their version of the site visit:

   At the beginning of the site visit, Mr. Buchanan, counsel to the Board, stated that the Board would not allow the production of testimony or new evidence, but would allow the applicant and his counsel to answer questions of the Board. Of course, questions posed by the Board would be for the purpose of adducing evidence. M[r]. Buchanan further stated that the role of undersigned counsel and the citizen allowed to attend (Dr. Chad Stoltz) was to listen and observe.

   Mr. Buchanan stressed that because the site visit was a meeting of the Board of Appeals, and all Board members needed to see and hear the same things, it was necessary for all Board members [to] stay together in one group during the visit. However, staying together was not to be. The members of the Board did not stay together; as the site visit progressed, some members took a walking tour as the applicant described the location of the driving area and then the firing range, while others viewed the property boundary and Beaver Dam Creek, which runs along the boundary line. Because the property was extremely wet and muddy, Mt. [sic] Buchanan and one of the Board Members elected to remain on high ground while the

Respondents contend that WSG made a presentation before the Board regarding the location and impact of the planned development, that Board members questioned WSG representatives about matters outside the scope of the mere layout of the site, and that WSG submitted to the Board a document regarding prior County approval for use of the property as an airport.[21] Respondents further contended that the trip was fragmented and that the Board separated into different groups on various portions of the property, with each group hearing presentations by WSG at different times.

After the visit, two weeks prior to the final vote by the Board, Robert O'Neil filed a "Motion for Appropriate Relief" in which he alleged that, during the trip to the property, the owner of an adjoining piece of property, Charles E. Parmley, attempted to attend and was turned away, in violation of the public meeting provisions of the Charles County Code, the Board's Rules of Procedure, and, Section 4.07(c)(4) of Article

---

property tours took place. Consequently, the Board members did not hear the same presentations or observe the same views at the same time. In addition, no transcript or other written record was made of the event for the purpose fo complying with the dictates of Article 66B, Section 4.07.

An abutting property owner, Mr. Parmley, and his two sons attempted to participate in the meeting but were excluded.

(footnotes omitted). Mr. Buchanan, the county attorney who represented the Board and attended the trip, did not contest these assertions. His only description of what occurred at the property was during the hearing before the circuit court, when he stated that Respondents' characterization of the site visit was "inaccurate" and that, "[t]here was no presentation. Nobody was under oath. Nobody did anything other than answer questions." Mr. Mudd, attorney for WSG who also attended the trip, was similarly vague as to what actually occurred, stating at the circuit court hearing only that "[the trip] was simply an orientation. It was simply—answering questions. I don't know. Assuming we're at the same meeting. Maybe there was a different one he attended. I don't recall all the things he asserted."

21. In the hearing before the Circuit Court, counsel for the Respondents described the document:

Mr. Mudd even referred to a document that was not in evidence in the case, that document being some kind of a—a governmental approval for the use of this property as an airport. That was shown to the Board of Appeals.

66B. With regard to the trip to the property, Mr. O'Neil asserted that the Board held a non-public session at which it allowed WSG to introduce evidence, including testimony, without affording opponents any opportunity for review or rebuttal. Mr. O'Neil asserted that the trip to the property was not limited to observation alone, but was instead a forum for WSG to influence the Board outside the presence of the public.[22]

---

22. Mr. O'Neil's arguments in his Motion for Appropriate Relief regarding the site visit are as follows:

On March 17, 2009 a non-public session was convened at the subject site where evidence, including testimony, was submitted by the Applicant to the Board. The provision of testimony in a non-public setting is not consistent with the Charles County Code.

\*    \*    \*

Article 66B, section 4.07 requires all meetings of Board of Appeals to be open to the public. The logistical problems associated with opening a site visit to the public are understandable, but the manner in which the meeting was conducted required it. The site visit was not conducted in a fashion to simply allow the Board to view the site. It was a forum in which the Applicant was allowed to volunteer information, make legal arguments and submit evidence. The applicant was allowed to respond to questions of the Board that were outside of simple site orientation questions.

\*    \*    \*

The Board of Appeals rules also call for all meetings of the Board of Appeals to be open meetings, and they specifically prohibit the presence of the applicant at a meeting that is closed to the public. They further prohibit the taking of testimony or legal argument at a meeting that is not open to the public.

While this protestant commends the Board of Appeals and specifically the Chair in its and his attempt to gather additional information through a site visit, the visit resulted in a meeting that was improper under the rules, and was exploited by the applicant to introduce testimony and legal argument in contravention of the Board's rules.

\*    \*    \*

In addition, it did not appear that anyone from the Board who was taking notes attended all aspects of the tour, for the purpose of making a record of the proceeding in order to comply with the dictates of Article 66B, Section 4.07.

No matter how well intentioned a site visit was, it was not conducted in a fashion that afforded due process to all participants. The public was both generally excluded, as originally announced at the March 10th meeting, and protestants being specifically excluded, that is, the neighboring property owner, a Mr. Parmley, and his two sons who attempted to attend the meeting but were excluded. The violations, inadvertent as they may have been on the part of the Board, resulted in a significant boon to the applicant in its ability to intro-

With regard to the relief he sought, Mr. O'Neil contended that immediate action was necessary by the Board to cure the public meeting violations. He attempted to convince the Board to reform the record, noting the Board's closure of the site visit and its failure to record anything that transpired might not survive judicial review. He proposed measures for the Board to allegedly cure its missteps, including creating a summary of that which occurred at the site visit, re-opening the record to allow for cross examination, and allowing written rebuttal of the evidence and testimony adduced by WSG at the property:

> [T]his protestant would prefer that the respective rights of the applicant and protesting property owners be resolved on the basis of a complete and fairly developed record, and not turn on procedural defects. Toward that end, the Board is respectfully requested to reopen the record and establish the following procedures:
>
> a. The Board of Appeals should attempt to create a document summarizing what transpired during the March 17th site visit, including any factual representations or legal arguments made the applicant of its counsel [sic]. This document should be entered into the public record of the proceeding.
>
> b. The Board should re-open the record and allow for reasonable cross-examination of the applicant's witnesses and following any re-direct by the applicant's counsel allow protestants to submit written evidence and be subjected to cross-examination by applicant's counsel on that evidence. This is a uniquely complex matter and due process demands that protestants have more than more than [sic] three minutes for cross

---

duce evidence, testimony, and argument outside the scrutiny or cross-examination of the majority of the protestants, and also outside of the closing of the record, which was closed on March 10th. The testimony and evidence presented at the March 17th site visit was subject to no cross examination, no re-direct examination, and no re-cross examination as required by the Board's rules.
(footnote omitted).

examination. If the Board is concerned about unreasonably lengthy cross-examination, it can require that a protestant desiring to conduct cross-emanation [sic] file a request with the Board for a specified amount of time.

\* \* \*

d. All of these remedies should be afforded after adequate notice to the public.

e. The applicant has closed its evidence, except for rebuttal. Indeed, the Applicant has supplemented its evidence in the site visit. It should not be able to submit further evidence, except in rebuttal. It should be afforded cross examination and re-cross of any new testimony as the rules provide.

In response, WSG filed a Motion of Ne Recipiatur, which urged the Board to strike Mr. O'Neil's Motion for Appropriate Relief on the grounds that it was "filed too late and not in the mode required by law and [was] insufficient in substance."

At the beginning of the April 14 hearing, the Chair denied WSG's Motion of Ne Recipiatur, and granted Mr. O'Neil's Motion for Appropriate Relief in part, by accepting Mr. O'Neil's written testimony, and denying all other relief sought by Mr. O'Neil's motion. By a majority of its members, the Board voted to approve WSG's application for a special exception.[23] Subsequently, on June 9, 2009, the Board filed its written Decision and Order memorializing its decision, which included the "site visit" in the bases for the decision:[24]

---

23. The Board imposed a number of conditions on the grant of the special exception, including: that the berms around the firing range and driving tactics area be raised from eight feet to ten feet; that WSG adhere to the stewardship plan of the site and post on its website the plan along with environmental testing results updated annually; that the special exception will run with the ownership, not the property, so that, if WSG abandoned or conveyed the site, they must restore the property to its "original environmental condition"; and that operating hours be restricted to Monday through Friday, 8:30 a.m. to 5:30 p.m., Saturday, 8:30 a.m. until 1:00 p.m.

24. In its prefatory paragraph, in addition to noting that "[t]his matter came before the Board of Appeals for hearing on February 24, 2009,

2. The Board found that the proposed use will not be detrimental to or endanger the public health, safety, and general welfare as the use is providing adequate safety measures for the firearms research.... Additionally, the driving tactics research area ... will be buffered by existing trees on all sides.

\* \* \*

5. The Board found that the proposed facility will not be detrimental to the use, peaceful enjoyment, economic value or development of surrounding properties or the general neighborhood.

\* \* \*

6. Based upon the Applicant's submittal, testimony presented and exhibits, the Board found that the proposed use will not cause an impact on traffic nor cause objectionable noise, type of physical activity, fumes, odors, dust or glare. The noise generated on site regarding firearm or driving tactics research should be minimal and not cause objectionable impact, in any form, to neighboring properties.

\* \* \*

11. A site visit was conducted on Tuesday, March 17, 2009.

\* \* \*

Based upon this visit, the Board found the site consistent with the Applicant's testimony and site plan for the use of "Research Facilities and Laboratories without processing of materials" (Use # 704.100).

Respondents, among others, filed a Petition for Judicial Review of the decision of the Board of Appeals and supporting memorandum in the Circuit Court for Charles County, in which they contended, among other allegations, that "[t]he decision of the Board of Appeals should be vacated because it

---

March 10, 2009 and April 14, 2009 ... as a request for a Special Exception for a research facility, in accordance with ... the *Charles County Zoning Ordinance*," the Board's Decision and Order specified that it granted the application based on its Findings of Fact and Conclusions of Law.

is irrevocably tainted by the Board's denial of due process, violation of relevant state and county laws, failure to adhere to its own rules, and the absence of substantial evidentiary support." Specifically, with respect to open meetings and the site visit, the memorandum alleged that the public was denied access to the site visit conducted by the Board in violation of Section 4.07(c) of Article 66B, Section 297–412 of the Charles County Code, and the Board's Rules of Procedure.

The County responded, arguing that no procedural rules were violated because the "citizens present" at the meeting at which the Board announced it would conduct the site visit "were asked to agree on a representative [and] [t]hey selected a Dr. Chad Stoltz." WSG separately argued that the due process violation claims were baseless and not supported by the record, because no person objected either to the site visit or to the manner in which the Board selected representatives of the public prior to the visit, and therefore any objection to the visit was untimely. Furthermore, WSG argued that the exclusion of the public from the site visit was warranted because "the property is privately owned."

The Circuit Court, after a hearing, issued a written opinion which held that the Board's decision did not sufficiently address whether the proposed use was in accordance with the Charles County Comprehensive Plan and remanded the case to the Board for an articulation of its findings in that regard. With respect to the trip to the property and alleged open meetings violation, the judge found that the Respondents had not preserved the issue for review and stated:

> The first objection to either the occurrence of the March 17 site visit or to the manner in which it was conducted appears in the petition for judicial review. The visit had occurred before the April 14 Board meeting at which argument was had over what evidence submitted on or after March 10 would be received or rejected, summations were made and Board members cast their votes on the application. In the petition it is contended that the March 17 site visit was in effect a closed hearing from which the public was excluded, of which no record was preserved and at

which substantive evidence was presented by Applicant and improperly received by the Board. At the January 5 hearing before the Court counsel who were present at the site on March 17 could not agree as to who said what during the event. Under these circumstances it cannot be said that the party(-ies) now complaining of the process properly made a record (at least on April 14) and preserved the issue for review.

The Respondents appealed to the Court of Special Appeals, questioning not only the open meetings decision but also whether substantial evidence supported the Board's findings. WSG and the County cross appealed, both questioning whether the Circuit Court erred in remanding, rather than affirming, the Board's decision.

The Court of Special Appeals, in a reported opinion, reversed the Circuit Court, for remand to the Board of Appeals, for another hearing and decision, on the basis that the site visit violated the open meeting requirements of Section 4.07(c) of Article 66B and Rule III of the Board Rules of Procedure. *Bowie v. Bd. of County Comm'rs of Charles County*, 203 Md.App. 153, 36 A.3d 1038 (2012). The Court of Special Appeals held that Respondents preserved their objection to the site visit by filing their Motion for Appropriate Relief before the Board reached its decision and held that the trip to the property was a "meeting" under Section 4.07(c) of Article 66B and Rule III of the Rules of Procedure of the Board of Appeals. *Id.* at 164–65, 169, 36 A.3d at 1044–45, 1047. The intermediate appellate court further held that "that the March 17, 2009 site visit violated the open meeting requirements of [section] 4.07(c)(4) and Rule III," noting that "[c]learly, the Board was transacting public business during the site visit," and "[t]he fact that the site visit occurred on private property does not transform the Board's meeting into an event exempt from open meetings requirements." *Id.* at 170, 36 A.3d at 1048.

Before us, WSG contends that Respondents' objections to the property visit were not preserved for appellate review. WSG argues that no one objected to the visit when it was

proposed by the Board and that those who were permitted to attend made no objection to the way in which the visit was conducted. Even if the objection was preserved, however, WSG argues that what occurred at the property was a "site visit" limited to observation alone and was thus removed from the strictures of open meetings requirements. Finally, WSG argues that the Court of Special Appeals erred in failing to give guidance to the Board to conduct the new proceeding on remand, maintaining that the proper remedy was to remand with instructions to the Board as to how to proceed.

Respondents counter that open meeting requirements cannot be waived "by one or more persons attending an administrative hearing or lost by failure to protest loudly enough that the court reporter catches and records the objection." Respondents also contend that the Motion for Appropriate Relief filed by Mr. O'Neil sufficiently notified the Board of the objections. With regard to the applicability of open meeting requirements, Respondents argue that, because the Board attended the visit with WSG representatives and engaged in discussion of the merits of its application, the trip to the property constituted a meeting required to be open to the public. Respondents maintain that because the Board relied upon facts that it gleaned from the trip and because the public was excluded and no record kept, the deliberative process was tainted. Finally, Respondents contend that the Court of Special Appeals' remand was appropriate because there exists no requirement in Maryland that an appellate court "provide explicit directions or guidance in a remand mandate."

"The basic argument for open meetings is that public knowledge of the considerations upon which governmental action is based is essential to the democratic process." Note, *Open Meeting Statutes: The Press Fights for the "Right to Know"*, 75 Harv. L.Rev. 1199, 1200 (1962). Open meetings legislation further ensures "the free flow of information to the electorate by requiring governmental bodies to hold public meetings," and "guard[s] against corruption and deceit and promote[s] public faith in government." Teresa Dale Pupillo, *The Changing Weather Forecast: Government in the Sunshine in the*

*1990's—An Analysis of State Sunshine Laws,* 71 Wash. U. L.Q. 1165, 1166 (1993). In *Town of Palm Beach v. Gradison,* 296 So.2d 473, 477 (Fla.1974), the Supreme Court of Florida succinctly and clearly described the breadth of the public deliberative process embraced by open meetings legislation:

> One purpose of the government in the sunshine law was to prevent at nonpublic meetings the crystallization of secret decisions to a point just short of ceremonial acceptance.... The statute should be construed so as to frustrate all evasive devices. This can be accomplished only by embracing the collective inquiry and discussion stages within the terms of the statute, as long as such inquiry and discussion is conducted by any committee or other authority appointed and established by a governmental agency, and relates to any matter on which foreseeable action will be taken.

We have consistently supported the legislative purpose of requiring strict adherence to public meetings provisions through providing notice to the public and keeping a record of the meetings, among other measures. *See, e.g., City of Baltimore Development Corp. v. Carmel Realty Associates,* 395 Md. 299, 321–22, 910 A.2d 406, 418–420 (2006) (describing the breadth of openness required); *Community and Labor United for Baltimore Charter Committee (CLUB) v. Baltimore City Board of Elections,* 377 Md. 183, 193–94, 832 A.2d 804, 809–10 (2003); *Board of County Commissioners of Carroll County v. Landmark Community Newspapers of Maryland, Inc.,* 293 Md. 595, 599–601, 446 A.2d 63, 64–66 (1982).

The public meetings mandates that apply in the present case emanate from Section 4.07 of Article 66B,[25] requiring that Charles County,[26] among others, establish a Board of Appeals

---

**25.** Sections 4.04 to 4.08 of Article 66B set forth the applicable review procedures for zoning matters applicable to Charles County. *Holiday Point Marina Partners v. Anne Arundel County,* 349 Md. 190, 202, 707 A.2d 829, 835 (1998).

**26.** The Certificate of Adoption for the Zoning Ordinance of Charles County states:

to review applications for special exceptions and adopt rules and regulations governing the Board's procedures. Section 4.07(c)(4) further mandates that "[a]ll meetings of a board of appeals shall be open to the public," and Section 4.07(c)(5) requires that the Board "shall make a transcript of all proceedings" which "shall be a public record."

Section 297–409 of the Charles County Code sets out the "[p]owers and duties" of the Board of Appeals, including that the Board shall hear and decide on, among other things, "[a]pplications for special exception uses and enlargements, extensions, modifications or revocations of special exceptions[.]" Charles County Code, Section 297–409(A)(2). Section 297–412 specifies the requirements that the Board hear testimony, receive evidence, and make a record of the public hearing. Section 297–415 sets out the Board's "procedures and minimum standards for the consideration and authorization of special exception uses," Section 297–415(B), and contains a notice and public meetings provision. Section 297–415(G). With regard to notice of the hearing, Section 297–411 requires notice to adjoining property owners, posted signs on the property, and, for special exceptions specifically, publication in a local newspaper of the time and place of the meeting and information regarding the special exception sought.

The Board also adopted its own rules, echoing the open meeting requirements of Article 66B and articulating the requirement that hearings shall be open to the public and be electronically recorded:

> The Board of Appeals may meet in a closed session for any reasons specified in the Maryland open meetings law, codified at Section 10–501, *et. seq.* of the State Government Article of the Annotated Code of Maryland.... However, in that regard all hearings shall be held in open public session

---

The County Commissioners of Charles County, Maryland, on December 18, 1974, following a public hearing held November 25, 1974, adopt and herewith submit to the Maryland Department of State Planning a Zoning Ordinance as required by Article 66B of the Annotated Code of Maryland.

Zoning Ordinance for Charles County, Maryland (Dec. 31, 1974).

and no evidence, argument, or other matter shall be received by the Board in a closed session, and no party in interest shall be heard by the Board of Appeals in a closed session. All evidence shall be presented to the Board of Appeals in hearings open to the public. The hearings will be electronically recorded.

Rules of Procedure, Rule III. The Rules require the Board to keep a record of the visit, including all testimony and exhibits,[27] and that the Board "will conduct hearings in a manner best calculated to afford all parties an opportunity to present their positions and to serve the ends of justice and fairness." *Id.*, Rule XII. In the present case, no one disputes that the "site visit" in issue did not include the public in general nor was it recorded.

Rather, WSG argues that the Respondents had to raise their objection to the limitations of the site visit before or during the visit itself. The Circuit Court Judge agreed that Respondents had not preserved the issue.

■ The Court of Special Appeals disagreed, however, and determined that the Respondents had preserved their objections, specifically noting the various hurdles that different Respondents faced. Moreover, the Court of Special Appeals noted that:

it was not the [Respondents'] obligation to make a record of what happened at the site visit[;] . . . that burden is one for the Board to bear. This is a particularly important obligation in light of the fact that in the circuit court, counsel for the parties could not agree as to what occurred during the site visit.

*Bowie v. Bd. of County Comm'rs of Charles County*, 203 Md.App. 153, 165, 36 A.3d 1038, 1045 (2012) (footnote omitted). Finally, the Court of Special Appeals noted the absurdity of WSG's argument that those allowed by the Board to attend

---

**27.** Rule V of the Rules of Procedure requires that "[t]he Board of Appeals will cause to be prepared an official record of its proceedings in each case, which shall include all testimony and exhibits...."

the site visit could waive the public's objection to the visit to the property:

> [WSG's] preservation objections also do not pass muster. [Respondents'] counsel, by not objecting to attendance at the site visit only by representatives and to a partially closed meeting, could not possibly have made such an agreement for those members of the public in attendance at the March 10th hearing that he did not represent and for those members of the public allegedly seeking admission to the March 17th site visit.

*Id.*

We agree. At the Board meeting at which the site visit was proposed, there was no discussion by any Board member of public meetings mandates, although the Board was clearly bound by the meeting mandates of Section 4.07 of Article 66B, the Charles County Code, and its own Rules of Procedure. The burden was on the Board, not those in attendance, to enforce its own strictures.

Mr. O'Neil, further, filed his Motion for Appropriate Relief with the Board two weeks before its final hearing and before a final vote was taken. He objected to the fact that the public was not permitted to attend the site visit, citing violations of public meeting procedures prescribed by Section 4.07 of Article 66B, Section 297–412 of the Charles County Code, and the Rules of Procedure of the Board of Appeals, and proposed that a record of the site visit be made and to reopen evidence to allow rebuttal of evidence erroneously secured during the visit. The Board, however, denied the Motion without any comment. These actions certainly do not support any notion that reasoned public outcry had any impact on the Board's decision-making.

In asserting that the Respondents had to interpose an objection to the visit before or during the visit, WSG relies upon *In re Ryan S.*, 369 Md. 26, 797 A.2d 39 (2002), and *Mayor and City Council of Baltimore v. Theiss*, 354 Md. 234, 729 A.2d 965 (1999), but these cases are inapposite. Neither *Ryan* nor *Theiss* involved administrative agency decisions or

open meetings requirements. Rather, *Ryan* involved the necessity of interposing an objection to permit a judge to respond in order to avoid waiver, while *Theiss* involved the necessity of raising an objection during the context of a deposition in order to preserve the objection.

WSG next contends that the site visit in issue was not subject to the open meetings mandates of Section 4.07(c) of Article 66B, the Charles County Code and the Rules of Procedure of the Board of Appeals, because the visit was not a meeting but merely observatory in nature and done to confirm facts already in evidence. WSG stresses that the visit by the Board was limited to "visual orientation" alone, and as such, did not need to be open to the public.

A site visit by a board has been called a "common practice" that serves to "freshen recollection and sharpen the board's perception of the specific problem in issue." Patricia E. Salkin, American Law of Zoning, Section 40:38, 40–16–40–117 (5th ed.2012). As "common" as site visits may be, reliance by a board upon information gleaned from the site visit implicates heightened procedural requirements:

> If the board relies upon knowledge acquired through an inspection of the premises, and not otherwise disclosed in the record, the facts thus discovered by the board must be disclosed. The personal knowledge of the board must be spread on the record, or such knowledge will not support a conclusion of the board.... Failure to disclose such knowledge and to afford the parties an opportunity to refute it may constitute a denial of due process of law.

*Id.* at 40–117 (footnotes omitted).

The Court of Special Appeals in the present case identified that which elevates a site visit above mere observation, noting that when a site visit "is conducted to obtain information material to issues raised in the adjudicatory proceeding, the agency should conduct the visit on the record in the presence of the parties." *Bowie,* 203 Md.App. 153, 167, 36 A.3d 1038, 1045 (2012) (quotation marks and citation omitted). The court further noted that reliance by the Board upon information it

obtained from the site visit in the present case was improper where the Board "fai[ed] to disclose this information and to allow [Respondents] to challenge this evidence through cross-examination or other means." *Id.* at 170–71, 36 A.3d at 1048. Further, the Court of Special Appeals noted the importance of creating a record:

> The Board's written decision and order state that based upon the site visit it "found the site consistent with the applicant's testimony and the site plan. . . ." This is no substitute for what happened on March 17, 2009. Such a record would have informed the parties and a reviewing court of the evidence gathered from the site visit that led the Board to credit [WSG]'s testimony and approve its site plan.

*Id.* at 170, 36 A.3d at 1048.

It may be true that site visits without observance of the nuances of public meetings strictures are permitted if the board limits itself to observation alone. *See In re Quechee Lakes Corp.*, 154 Vt. 543, 580 A.2d 957, 962 (1990) (noting that site visits by a board for observational purposes are appropriate as long as those visits do not form the sole basis for the board's decision). We have held, however, that a board must make a record of its site visit if the board relies upon that visit in reaching its decision in a non-public meetings context. *See, in this regard, Heath v. Mayor and City Council of Baltimore*, 187 Md. 296, 305, 49 A.2d 799, 804 (1946) (reversing the decision of a zoning appeals board granting a special exception because the board announced in its decision simply that it had "made a study of the premises" and provided no record or other evidence of what occurred at the site). In *White v. North*, 121 Md.App. 196, 708 A.2d 1093 (1998), *vacated on other grounds*, 356 Md. 31, 736 A.2d 1072 (1999), Judge Glenn T. Harrell, Jr., then writing for our intermediate appellate court in another non-public meetings case, explained the concerns that arise when a board obtains information from a site visit:

> To the extent the Board obtains information from such an "on-site inspection," and such information is not already a

matter of record in the pending case and is material to the ordinance requirements and the Board's decision, the Board would do well for itself and parties before it . . . to conceive of a technique to supplement the record with such evidence before rendering its decision.  In doing such, the Board needs also to be mindful of the right of opposing parties to be apprised of that additional evidence, and given an opportunity to respond.

121 Md.App. at 229, 708 A.2d at 1109–10.[28]

In the present case, the visit to the property, by any account, was not merely observatory, but participatory and influential.  Albeit chaotic, it is clear that discussions among the Board members and WSG representatives occurred and that no record was kept. No public notice of the visit on March 17, 2009 was given.[29]  The Board also relied on the visit in its decision.

---

**28.**  Various of our sister states have expressed concerns when no record is kept of site visits.  The Supreme Court of Vermont addressed the failure of a board of appeals to place its observations at a site visit on the record.  *In re Quechee Lakes Corp.*, 154 Vt. 543, 580 A.2d 957 (1990).  Although that court found that the issue of the board's failure to record was not preserved for review, it said that "site visit observations on which the fact-finder intends to rely must be placed on the record in order to preserve the right of rebuttal and to facilitate review."  *Id.* at 962.  *See also Committee for Washington's Riverfront Parks v. Thompson*, 451 A.2d 1177, 1182 (D.C.1982) (upholding action taken at an "off-the-record site visit" because the zoning agent "cured this defect" by conducting a subsequent site visit with the parties present and a subsequent hearing "at which [the zoning officer] first identified the material facts disclosed by her visits and then allowed the parties to address them").

**29.**  While Rule XI of the Board Rules of Procedure states that "it will not be necessary to re-advertise or re-post the property in matters related to zoning" when an initial hearing is continued, the Rule requires that "the time and place of any continuance will be announced immediately prior to the suspension of the pending proceeding."  To be sure, the Board announced the time and place of the visit, but in so doing, the Board also announced that the meeting was closed to all but "representatives."  Clearly, notice of a public meeting cannot be effective where the notice itself closes the meeting.  *See Cassidy v. Baltimore County Board of Appeals*, 218 Md. 418, 424, 146 A.2d 896, 899 (1958).

With regard to what constitutes a meeting of the Board which must be open, Article 66B does not define the term. Neither the Charles County Code nor the Rules of Procedure of the Board of Appeals contain the term "meeting" but refer to a "hearing," without definition. In defining, then, whether the property visit was a meeting and a hearing, we lack statutory direction. Black's Law Dictionary defines "meeting" as "[t]he gathering of people to discuss or act on matters in which they have a common interest; esp. the convening of a deliberative assembly to transact business." Black's Law Dictionary 1072 (9th ed.2009). Hearing, in an administrative law context, as here, is defined in Black's Law Dictionary as, "Any setting in which an affected person presents arguments to a decision-maker <a hearing on zoning variations>." *Id.* at 788.

█ In the instant case, the visit to the property by the Charles County Board of Appeals constituted a meeting under the provisions of Article 66B and a hearing under the Charles County Code and the Rules of Procedure of the Board of Appeals. The Board was conducting a meeting when it was transacting public business as it visited the property under review. Board members interacted with WSG representatives and gathered information pertaining to the special exception at issue. The Board also was conducting a "hearing," because discussions occurred among Board members and WSG representatives, in contravention of the Board's own Rule that "no evidence, argument, or other matter shall be received by the Board in closed session." The Board, furthermore, did not keep a record of that which occurred at the site, thereby violating the requirements of Article 66B as well as that of Section 297–412(E) of the Charles County Code and Rule V of its own Rules of Procedure.

WSG, however, relies on 95 Op. Att'y Gen. 129 (2010) to support its position that the site visit did not require open meeting adherence. That opinion addressed the question of whether the Saint Mary's County Board of Education could convene in closed session. The opinion notes that "county

boards of education need not meet in open session when they are performing an 'administrative function' and when the State education law does not otherwise require an open meeting." *Id.* WSG urges that the Board in the instant case was performing administrative fact finding and not conducting the visit as part of its deliberations. Ignoring the obvious incongruity of this position, namely that any facts gathered by the Board at the property would necessarily inform their ultimate decision and thus the visit was part of the Board's decision-making process and not mere administration, WSG's reliance is otherwise misplaced. In that opinion, the Attorney General concluded that the board must hold meetings open for "many, if not most, activities that would qualify as an administrative function under the State [Open Meetings Act]" because the county's own open meetings provision, governing meetings of the board in question, did not provide an exception for administrative functions. 95 Op. Att'y Gen. 129. Similarly, Section 4.07 of Article 66B recognizes no "administrative function" exception to the requirement that boards of appeals hold open meetings.

WSG further contends that the Board was not bound by open meetings strictures because "informal procedures may satisfy due process requirements where they do not create procedural unfairness." The informal procedures, WSG asserts, were the selection of "representatives" to accompany the Board on the site visit and the fact that the Board set out orally the limitations on the site visit when it was proposed. In support of this contention, WSG cites our decisions in *Calvert County Planning Commission v. Howlin Realty Management, Inc.*, 364 Md. 301, 772 A.2d 1209 (2001), and *State v. Cates*, 417 Md. 678, 12 A.3d 116 (2011), for the proposition that "due process does not always require strict adherence to statutory procedures where administrative action is governed by statute." WSG's reliance is misplaced, however.

In *Howlin*, we concluded that although a board failed to adopt formal rules of procedure in violation of its statutory mandate, the board's process was fundamentally fair, noting

that "[d]ue process is concerned with fundamental fairness in the proceeding, not with whether the agency has failed in some way to comply with a statutory requirement." 364 Md. at 322, 772 A.2d at 1221. In *State v. Cates,* we held that a police department did not deprive its officers of due process when it reissued speed camera tickets to them, reasoning that "[d]ue process does not require strict adherence to a statute by an administrative agency *where such adherence would provide no additional guarantees of fairness, notice, or an opportunity to be heard." Cates,* 417 Md. at 701, 12 A.3d at 130 (emphasis added).

Obviously, the Board's management of the visit to the property was not fair to the public, where no sufficient notice was given, no record was kept, and members of the public were excluded. To compound matters, the Board, in its Findings of Fact and Conclusions of Law, relied upon information that it gained from the site visit. The "site visit" was then, clearly, a meeting under the strictures of Article 66B and the attendant hearing requirements of Sections 497–412 and 415 of the Charles County Code and Rule III of the Rules of Procedure of the Board of Appeals.

■ What remains, then, is what is the remedy for the violations of the open meetings mandates implicated in the present case? WSG argues that because the Board attempted to ensure that the public was fairly represented at the site visit, any potential violation of open meetings mandates was not "willful" under the State Open Meetings Act. Respondents, however, dispute the issue of willfulness, both in its relevance and its application and urge that the decision of the Board be voided. We need not, however, address the issue of whether the State Act applies to the instant case, because it was not raised before the Circuit Court.

■ The general rule when a public body acts contrary to the mandates in its charter is that its actions will be considered void *ab initio.* In *von Lusch v. Board of County Commissioners,* 268 Md. 445, 302 A.2d 4 (1973), for example, we considered whether the enactment of an amendment to the Comprehensive Zoning Ordinance for Queen Anne's County

by the County Commissioners was proper, given the procedures established by Section 4.04 of Article 66B, Maryland Code (1957, 1970 Repl.Vol.), which required notice and a hearing before its passage. The County Commissioners publicized the text of the proposed amendment and held a public hearing on the matter, but, when the Commissioners rendered their decision enacting the amendment, it contained language that was materially different than that which had been published prior to the hearing. We declared "invalid and void" the amendment, because Section 21.23 of the Zoning Ordinance stated, "[n]o change in or departure from the proposed amendment as recommended by the Planning Commission shall be made unless the same be resubmitted to said Commission for its further recommendation. The Planning Commission shall file its further recommendation within thirty (30) days...." *Id.* at 457–58, 302 A.2d at 10. We noted that "the word 'shall' is mandatory and not directory," *id.* at 457, 302 A.2d at 10, and that the County Commissioners had never resubmitted the proposed amendment to the Planning Commission, thus rendering void the amendment. *Id.* at 458, 302 A.2d at 10; *see also Walker v. Board of County Commissioners of Talbot County,* 208 Md. 72, 86–87, 116 A.2d 393 (1955).

■ In the case *sub justice,* each of the public meetings mandates at issue provides mandatorily that the Board "shall" hold open meetings. Specifically, Section 4.07(c) of Article 66B provides that:

(4) All meetings of a board of appeals shall be open to the public.

(5)(i) A board of appeals shall make a transcript of all proceedings, showing the vote of each member on each question, or the member's absence or failure to vote.

(ii) 1. A board of appeals shall immediately file the transcript of its proceedings in the office of the board.

2. A transcript shall be a public record.

while the Charles County Code states, in Section 297–412:

A. Before making a final decision on any appeal or application, the Board shall hold a hearing on the matter to be considered.

B. The hearing shall be open to the public, and all people aggrieved by the outcome of the appeal or application shall be given an opportunity to present testimony and evidence and to cross-examine persons who testify.

and the Board's own Rules of Procedure state:

The Board of Appeals will hold such sessions and hearings as may, from time to time, be scheduled by the Chairperson or his/her designee.

The Board may conduct such preliminary hearings as are deemed necessary by the Chairperson. The Board of Appeals may meet in a closed session for any reason specified in the Maryland open meetings law, codified at Section 10–501, *et. seq.* of the State Government Article of the Annotated Code of Maryland.... However, in that regard all hearings shall be held in open public session and no evidence, argument, or other matter shall be received by the Board in a closed session, and no party in interest shall be heard by the Board of Appeals in a closed session. All evidence shall be presented to the Board of Appeals in hearings open to the public. The hearings will be electronically recorded.

As each of these Sections makes clear, the Board violated mandatory requirements of the provisions that govern its conduct, as did the public body in *von Lusch.* Here, the public suffered an irreparable injury when the Board conducted a visit to the property, which was more than merely observatory and for which there was not the requisite notice nor record, upon which the Board relied. The Board's decision is, thus, void *ab initio.*

WSG's argument that guidance upon remand is a necessity is without merit. Here, the fundamental nature of open meetings was violated so that only a process that ensures adherence to the strictures of Article 66B, the Charles County Code, and the Rules of Procedure of the Board of Appeals for Charles County can be the remedy. On remand for another hearing and decision, we agree with the Court of Special Appeals that "it would be up to the Board to decide whether

to hold another site visit, one that is tightly controlled, open to the public and on the record." 203 Md.App. at 171, 36 A.3d at 1048.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONER.**

McDONALD, J., concurs.

McDONALD, J., concurring.

I agree with the analysis and conclusions drawn in the majority opinion. I write only to add what I believe is a necessary clarification of the relationship of the State Open Meetings Act, Maryland Code, State Government Article ("SG"), § 10–501 *et seq.*, to this case.

The threshold for the application of the State Open Meetings Act to a particular situation depends on affirmative answers to three questions:

1—Is the entity a "public body" as defined by the Act? *See* SG § 10–502(h). The Board of Appeals fits that definition.

2—If so, is the public body engaged in a "function" covered by the Act? The answer, in this case, is yes. *See* SG § 10–503(b).

3—If so, is the gathering a "meeting" as defined by the Act—*i.e.,* the convening of a quorum for the consideration or transaction of public business. SG § 10–502(g) (definition of "meet"). Although there is no prior case of which I am aware that analyzes the Act's definition of "meeting" in relation to site visits, I will assume that a site visit attended by a quorum of the Board of Appeals—as in this case—is a "meeting" for purposes of the Act.

If the Act applies, the meeting must be open—*i.e.,* accessible by the public—unless one of the 14 specific exceptions to the open meeting requirement pertains and is properly invoked by the public body. SG § 10–508. (There apparently has been no contention that any exception to the openness

**632**

requirement applied to these circumstances). In addition, the entity must comply with the Act's requirements concerning notice of meetings, preparation and maintenance of minutes, procedures for closing parts of meetings, and other matters.

Sometimes, however, another law may separately impose an open meetings requirement on a public body. Such is the case in this matter, as carefully outlined in the majority opinion, for Article 66B, § 4.07, the Charles County Code, and the Board's own rules require open meetings. When another law imposes "more stringent" requirements—*i.e.*, requires greater openness—the Open Meetings Act defers to that law. SG § 10–504. In my view, other open meetings provisions applicable to the site visit in this case impose "more stringent" requirements related to the issues in this case and, accordingly, our opinion properly focuses on those requirements and does not fully analyze application of the Open Meetings Act here.